**UNITED STATES of America,
Plaintiff,**

v.

**Roger H. SULLIVAN, Defendant.**

**Crim. No. 10215.**

United States District Court.
D. Hawaii.
Jan. 11, 1968.

Yoshimi Hayashi, U. S. Atty., District of Hawaii, Honolulu, Hawaii, for plaintiff.

No appearance for defendant.

## MEMORANDUM OF DECISION AND ORDER

PENCE, Chief Judge.

This is a motion under 28 U.S.C. § 1651 (a) to vacate a judgment of conviction and expunge the sentence served by the petitioner eighteen years after his entry of a plea of guilty.

On March 25, 1949 the United States Attorney for the District of Hawaii (then a Territory), by way of Information, after he had properly waived presentment to a grand jury, charged the petitioner, Roger H. Sullivan, with falsely making, altering, forging and counterfeiting check No. 5915 drawn upon the Treasurer of the United States in the sum of $56.00 in violation of section 495 of Title 18, United States Code. On the same day Sullivan was also arraigned, and upon pleading guilty, was sentenced by U. S. District Judge Metzger to one year and one day in prison. Sullivan served and completed that sentence in 1949 and 1950.

Seventeen years after release from prison, on August 7, 1967, Sullivan filed this motion seeking a Writ of Coram Nobis to vacate the judgment of conviction entered March 25, 1949, and to expunge the sentence served by him subsequent thereto. Sullivan's motion papers alleged that at the time he entered a plea of guilty, his "constitutional right to the aid of counsel was unconstitutionally abridged"; that he "had and has a good defense to the charge * * *"; and that he "has not brought an appeal before because he was unaware of his right to do so until the filing of this appeal."

On August 14, 1967 the United States Attorney was ordered to show cause why the court should not grant the motion.

In its reply, the United States contended that the judgment and commitment order [1] of Judge Metzger "is prima facie proof that petitioner was advised of his constitutional right to assistance of counsel" on the day the plea was tendered.

The narrow ambit of that reply of the United States Attorney per se indicated that a thorough examination of the record in this case was necessary to determine whether Sullivan had been in fact properly advised of his right to assistance of counsel and whether he had made a competent and intelligent waiver of that right.

The court has carefully examined a complete transcript of the March 25, 1949 proceedings along with all of the other documents appearing on file. At the 1949 hearing, at which Sullivan entered his plea of guilty, with reference to Sullivan's right to counsel and his waiver thereof, the following colloquy was recorded:

"THE COURT: Now, Sullivan, you have appeared here without counsel. Have you had any legal advice on the matter?

"THE DEFENDANT: The Coast Guard legal officer is over here, sir, the U. S. Coast Guard officer is present.

"THE COURT: Well, do you know to your own satisfaction whether or not you are ready to answer to the charge and what your answer would be?

"THE DEFENDANT: I am ready to answer to the charge, sir.

"THE COURT: All right. What is your plea, are you guilty or not guilty as charged?

"THE DEFENDANT: Guilty.

"THE COURT: Let a plea of guilty be entered. * * *" (Tr. pp. 4–5)

The inference most favorable to the Government to be drawn from the above record is that the defendant had had or was in a position to avail himself of legal counsel provided by the "Coast Guard legal officer." This was the not unreasonable conclusion apparently drawn by Judge Metzger when he discontinued his interrogation of the defendant regarding his right to counsel and forthwith accepted Sullivan's plea of guilt.

The United States Attorney has confirmed that the "Coast Guard Legal Officer" present in court on the day on which the plea was entered was Lieutenant (j. g.) [now Commander] Manson E. Meekins, then the Legal-Intelligence Officer for the 14th Coast Guard District (Hawaii). By affidavit now filed in this court by the United States Attorney, Commander Meekins states that he was not an attorney-at-law at the time of Sullivan's plea, nor had he ever been an attorney, nor had he then had but slight legal training. Furthermore, it now appears that on March 22, 1949 the same Lt. Meekins interrogated Sullivan regarding his alleged connection with a number of offenses, including the offense to which he, Sullivan, plead guilty on March 25. Official transcripts of the interrogations and statements made by Sullivan on the above dates now have been filed in the record by the Government.

From the above, the court finds that Meekins was not acting in the role of Sullivan's lawyer at the time of the hearing at which a plea of guilty was entered. It is also definite that Lt. Meekins could not and did not purport to serve as Sullivan's retained or appointed attorney-at-law prior to the time of plea;

---

1. The order of judgment and commitment, entered on a printed form (Cr. Form No. 25a) used by the Clerk as a routine procedure in criminal cases, reads in pertinent part as follows:

"On this 25th day of March, 1949 came the attorney for the government and the defendant appeared in person and without counsel; the court advised the defendant of his right to counsel and asked him whether he desired to have counsel appointed by the court, and the defendant thereupon stated that he waived the right to the assistance of counsel."

rather, it appears that Lt. Meekins was at all times an agent of the Coast Guard with the duty to investigate and interrogate coastguardsmen suspected of crime.[2] The transcripts of the interrogations held prior to March 25, on March 17 and 22, indicate that Sullivan was informed of his rights, including the right to have counsel before questioning began.

Apart from being present in the spectator section of the courtroom, Lt. Meekins did not participate in Sullivan's court proceedings. According to Meekins' sworn statement he was "in the court room as a spectator for the purpose of ascertaining immediate status and disposition of the case so as to be able to inform [his] superiors of the outcome for administrative purposes."

The record further discloses that at the time of the entry of his plea defendant was an 18 year-old indigent youth. Pri-

2. As noted above, while the record is clear that Meekins was not acting as petitioner's attorney at the time of plea, the record is unclear as to whether Meekins offered or attempted to serve as petitioner's legal adviser, and further, whether petitioner incorrectly concluded that Meekins was acting as such at least during the week preceding the date of petitioner's plea.

In response to the court's interrogatories sent to Sullivan, he answered the following, by way of affidavit dated November 6, 1967:

*Court's interrogatory:*

"Did you in fact discuss the question of your plea with the 'Coast Guard Legal Officer? If so, what do you recall was said by him as well as yourself relative to your plea of guilty?"

*Petitioner's answer:*

"The matter of my plea was specifically discussed with Lt. Meekins. Prior to the interrogation of March 17, 1949 I was interviewed by Lt. Meekins. After the interview was nearly concluded Lt. Meekins asked me if I had a lawyer. I told him I had none and couldn't afford anything like that. He then asked me if I would like him to assist me and to represent me at the Court hearing, stating that he believed that he could do so, that there wouldn't be any conflict of interest because the U. S. Coast Guard was not a party to the proceeding. Since that was so, he did not expect there would be any problem provided it was alright with the court—which he was rather sure would agree. I gratefully accepted his offer. "While detained in the U.S. Marine Brig I was interviewed by Lt. Meekins aside from the interrogation of March 22, 1949, and to the best of my knowledge, preceding the interrogation, advised me that his advice was for me to cooperate as fully as possible in giving any evidence that might be considered necessary. That it would show I was acting in good faith. He then detailed a list of missing items—missing in transit from the mail, and detailed items that were found in my locker. He also advised me that if I would plead guilty to the charges brought by the United States Government, no charges would be brought by the Coast Guard. I requested clarification, and he said that no court martial charges would be brought. He added that it was almost certain, although he could provide no guarantees, that because of his special relationship to the situation —acting as my representative and having been the investigator in the case, he could secure the leniency of the Court. I remember quite well that the interview opened with the question, 'Well, how would you like to be out of here and home with your brother by Spring?'

Less explicitly, Lt. Meekins indicated that because of his unfamiliarity with the court proceedings he was not sure that he could be of any help if I wanted to contest the case. The quite strong implication was that I would be on my own unless I entered a plea of guilty. This was reinforced by the Lt. Meekins statement to the effect that 'If you do try to make a case of it, your background will be held against you, and the Court probably won't be very sympathetic to anything you say.' Lt. Meekins said that he thought the best thing under the circumstances was to enter a plea of guilty. I agreed with his advice because I felt that he was in a position to know what was best for my interests. He gave every appearance of sympathy and interest in my cause, and to the best of my belief was my counsel and protecting my interests."

Commander Meekins' sworn answer to the question of his acting as petitioner's attorney was:

"At no time did I ever pressure SULLIVAN to plead guilty, or even encourage him to enter such a plea. At no time did I ever act or pretend to act as his defense counsel or attorney."

or to his enlistment in the Coast Guard, he had lived in foster homes and correctional schools for several years; he had had little, if any, formal education. He admitted running away from the correctional institutions on several occasions, and stated that he had "hung around with gangs."

■ The court finds the above facts to be true. The law, of course, to be applied to the above facts is the law existing on March 25, 1949. The recent Supreme Court opinions regarding right to assistance of counsel in federal criminal cases were not available for Judge Metzger's guidance and they are not applicable here.

■ Petitioner's choice of remedy, coram nobis, is proper, for under 28 U.S.C. § 1651(a) coram nobis lies to correct errors of the most fundamental character where the defendant has completed his sentence or is otherwise not in custody and where circumstances compel such action to achieve justice. United States v. Morgan, 346 U.S. 502, 512, 74 S.Ct. 247, 98 L.Ed. 248 (1954); United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129 (1914); cf. 28 U.S.C. § 2255. In 1949 the entry of a plea of guilty in a federal court without aid of counsel or a competent and intelligent waiver of counsel was, as it is today, a denial of a fundamental constitutional guaranty, providing the basis for the issuance of a writ of coram nobis. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); [3] Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1941); United States v. Morgan, supra, Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). See also Deckard v. United States, 381 F.2d 77, 78 (8 Cir. 1967); Heiden v. United States, 353 F.2d 53 (9 Cir. 1965).

■ The United States contends, quite correctly, that a presumption of regularity attends the judgment of the court when a collateral attack is made upon it and that the petitioner has a "heavy burden of proof" to rebut that presumption. On the other hand, the cases above cited show that there is also a strong presumption against waiver of the constitutional right to counsel. In determining whether a meaningful waiver was here made by Sullivan, all presumptions, however, are circumscribed by the facts and circumstances now in the record. Von Moltke v. Gillies, supra; Heiden v. United States, supra; Day v. United States, 357 F.2d 907, (7 Cir. 1966).

■ The record unequivocally shows that Judge Metzger did but conduct a most cursory examination into the circumstances under which Sullivan was tendering his plea. The transcript of the hearing at which the plea of guilty was entered is controlling over the conclusory statement in the formal Judgment and Order of Commitment prepared by the Clerk which announced in summary fashion that the accused waived his right to counsel.

■ As indicated above, the petitioner was on March 25, 1949 an 18 year old indigent youth. He had had limited education and no legal training. Most of his

3. "Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with his constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court—as the Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. * * *" Johnson v. Zerbst, supra at 467, 58 S.Ct. at 1024.

life had been spent in foster homes or correctional institutions. Under these circumstances the trial judge was charged with a responsibility which he could not summarily discharge. His failure to make a thorough inquiry bearing upon and establishing the defendant's capacity to make an intelligent and competent waiver, as required by the Sixth Amendment, stands as a jurisdictional bar to an otherwise valid conviction and sentence depriving defendant of his liberty. Johnson v. Zerbst, supra. See also Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). When Judge Metzger inquired of the defendant whether he "had any legal advice on the matter", the defendant's non-responsive answer should have put the judge on notice that a more thorough and searching inquiry was necessary to determine whether Sullivan had had competent legal advice preceding the hearing and whether Sullivan desired to waive his right to counsel at the time of his plea.

In Heiden v. United States, supra, the Ninth Circuit, sitting en banc, confronted a situation similar to the one in this case. The appellant, having waived counsel and pleaded guilty, was convicted and sentenced to a term of 20 years imprisonment. He sought to set aside his sentence, contending that he had not intelligently pleaded or waived counsel. The court, per Judge Merrill, stated:

"Rule 11, F.R.Cr.P. [in effect on March 25, 1949], provides in part:

'The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge.'

"At no time, either on arraignment or subsequently, did the District Court, pursuant to this Rule, determine that the plea was made with an understanding of the nature of the charge. *At no time did the court inquire into the degree to which waiver of counsel was intelli-*

*gently made."* 353 F.2d at 54. (Emphasis added.)

The court then went on to quote from Johnson v. Zerbst, supra, 304 U.S., at 465, 58 S.Ct. 1019, as follows:

"The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes one serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, *whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record."* (Emphasis added by the Ninth Circuit.)

"Rule 11 is mandatory. Munich v. United States, 337 F.2d 356 (9th Cir. 1964). It is contemplated by that Rule, and is the holding in Johnson v. Zerbst, that the fact that a plea was intelligently entered and that counsel was intelligently waived must be ascertained at the time of arraignment or of waiver and not after the fact. * * * " 353 F.2d 53, 55.

The entire record now clearly shows that the trial judge failed to ascertain Sullivan's understanding of his right to counsel and waiver thereof prior to entering his plea of guilt. Sullivan's rights were fatally prejudiced by such failure!

It is no answer to urge, as does the United States, that the accused made a competent waiver of counsel at the time of the entry of his plea because he had been advised of his "right" on two separate occasions prior to the date of the court hearing. Not only was the one allegedly giving the advice, Lt. Meekins, not a lawyer but moreover he was then not competent to represent the interests of the petitioner.

█ More importantly however, the duty and responsibility of the court to determine if there is a competent and

understanding waiver at the time of plea is not discharged by vague reference to advice given a defendant by a government agent in an out of court proceeding. Von Moltke v. Gillies, supra; cf. United States v. Forlano, 249 F.Supp. 174 (S.D. N.Y.1965), aff'd 355 F.2d 934 (2 Cir. 1966).

Therefore, it is ordered that the Writ of Coram Nobis prayed for shall be and it is hereby granted.

It is further ordered that the March 25, 1949 judgment of conviction be and it is hereby vacated, and the sentence—even though already served by Sullivan—is expunged.