JOHN EDWARD CARVALHO, Petitioner-Appellee, *v.*
ANTONE OLIM, Superintendent, Hawaii State Prison,
Respondent-Appellant

NO. 5442

MARCH 6, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI and
OGATA, JJ., and CIRCUIT JUDGE VITOUSEK
ASSIGNED TEMPORARILY BY REASON OF VACANCY

OPINION OF THE COURT BY KOBAYASHI, J.

This appeal arises out of a petition for writ of habeas corpus by John Edward Carvalho filed in the circuit court of the first circuit, State of Hawaii. The circuit court issued a writ of *coram nobis* on the ground that the State had failed to prove that petitioner voluntarily and understandingly waived his right to counsel. The petitioner was ordered transferred from the prison to the Honolulu jail to await further proceedings on the original indictment for first degree murder. The State now appeals from the order of the circuit court.

## FACTS

John Edward Carvalho (hereinafter referred to as petitioner) was arrested by the Honolulu police for the malicious conversion of an automobile in late June of 1959. The court record of the events that transpired after the petitioner's arrest for malicious conversion through the arraignment at which he pleaded guilty to first degree murder is minimal. The existing record consists of the complaint charging petitioner with first degree murder; a "Commitment for Trial by Jury", the indictment for first degree murder; a "Mittimus", indicating the conviction and sentencing of petitioner for first degree murder; a disposition report indicating petitioner's plea of guilty and the sentence of life imprisonment; a letter from petitioner requesting the court to reopen his case on the ground that he was not aware of what he was doing at the time of the arraignment, and also requesting that he be given a psychiatric examination; a letter from the trial judge requesting petitioner be given a psychiatric examination; and a letter and report from the prison officials concerning the psychiatric examination indicating that petitioner was impulsive and "an inadequate individual whose few defenses are easily

overwhelmed by the frustrations of living''. There are no transcript or minutes of the events which transpired at the arraignment proceeding. The court below was required to rely on facts which were reconstructed through the testimony of witnesses for the State who were either involved in the proceeding or were present at the time the events in question took place.

The testimony of the petitioner indicated that, during the time petitioner was being held for malicious conversion, he was subjected to intense interrogation by investigating officers concerning the whereabouts of a missing person. In the course of the interrogation the badly decomposed body of the missing person was discovered and subsequently the petitioner gave a statement indicating that he was responsible for the death of the victim.

The petitioner was indicted for murder in the first degree on July 16, 1959, and brought before the circuit court judge for arraignment and plea. In the proceeding relative to the herein petition for writ of habeas corpus, because of the lack of an official record of the proceedings of the original indictment, evidence was adduced by way of testimony of persons who were present in court on the days of petitioner's arraignment and plea. The following were adduced:

1. Supervising prosecuting attorney, Arthur S. K. Fong, who was present at the arraignment and plea proceedings testified as follows:

Q Could you relate to the Court what occurred at that arraignment.

A Well, I was not the prosecutor at that time handling the arraignment but I was sitting in this very courtroom in the jury box when the arraignment took place before Judge Hewitt. As I recall, Lincoln Ishida was the prosecutor at that who presented the case. I don't remember whether he read the indictment. I believe he read the indictment to the defendant. And as I recall, the best I can recall — and it's been twelve years — the defendant did indicate to Judge Hewitt that he wanted a court-appointed attorney for him. I think as I recall it then, for some reason there was a recess taken. And, again, it's

vague in my mind, but seems to me during the recess the judge did refer, as was the practice at that time, the defendant to the probation officer which I believe was either Mr. Castro or Mr. Rodenhurst at that time for an investigation.

During the recess, I believe defendant's [ex-]wife was in the courtroom at that time. There was some discussion between the defendant and his [ex-]wife. And after the discussion in which I think something to the effect, "If you did it, why don't you get it over with," something to that effect —

THE COURT: Say it again.

THE WITNESS: "If you had anything to do with it, why don't you get it over with at this time."

A — the [ex-]wife had told him at that particular time. And then he had indicated during the recess that he intended to change his plea to not guilty — from not guilty to guilty at that time.

During that period of time, both Mr. Ishida and myself tried to dissuade the defendant from changing his plea of guilty — to plea of guilty because I indicated to him at that time, "I don't want you to do this because, first of all, you can have a court-appointed attorney for the reason that you may be guilty of something — maybe rape, maybe murder; I'm not here to judge you — but there are defenses. You may be guilty of murder second, you may be guilty of manslaughter. But I don't think you should plead guilty at this time because the consequence is too severe."

2. The prosecutors' attempts to dissuade the petitioner from his decision failed, and after the recess ended, petitioner asked the court to be allowed to change his plea to guilty.

3. A. Peter Howell, Esq., who was a spectator at the arraignment and plea proceedings, testified as follows:

Q Could you tell the Court what occurred or what was said between the judge and Mr. Carvalho?

A Yes. The Defendant had wanted to change his plea from not guilty to guilty and the Prosecutor, Mr. Fong, so

advised the Court, and before the Court accepted the plea, there was a colloquy between the Court and the Defendant that lasted — oh, I'd say about 10 to 15 minutes.

The Judge asked the Defendant if he wanted to change his plea. The Defendant said yes. And the Judge said, "Before you do so, do you understand what you're being charged with?" And the Defendant said, "Yes."

And the Judge asked him, and I'm summarizing the conversation the best I can recall — "What is it you're being charged with?" And the Defendant said, "First degree murder." And the Judge said, "Do you realize what the penalty is for this offense?" And the Defendant said, "Yes. It's life imprisonment without parole."

The Judge asked him, "Do you wish to have an attorney to advise you or represent you before you enter this plea?" And the defendant said, "No."

And Judge Hewitt went on further to say, "If you want an attorney and you cannot afford to employ one, I will appoint one for you." And the Defendant said words to this effect, that he understood. Then Judge Hewitt said, "Do you want me to appoint an attorney for you?" And the Defendant said, "No."

Then the Judge asked a few more questions, apparently to satisfy himself that the Defendant really knew what he was doing and that the plea was voluntarily made to the effect that Judge Hewitt paused and was somewhat hesitant to accept the plea. And I, myself, was just sitting there astounded because I had never, in all my experience as a prosecutor or defense counsel, had ever seen anybody plead guilty to first degree murder, and this is why the case stands out in my mind. I just really couldn't — it was just really difficult for me to comprehend.

And so, I felt that the Judge, by his questions, was certainly leaning over backwards to make sure that the Defendant understood what he was doing and that he was fully advised as to the consequences of what he was about to do. But the Defendant said he wanted to plead guilty and that he knew what the punishment was and he did not

want counsel.

So, after some hesitation, Judge Hewitt finally asked him what his plea was, and the Defendant said, "Guilty." And so, with some reluctance, the Judge accepted the plea and after a few thoughtful moments, sentenced him to life imprisonment without parole.

The post arraignment and plea record reveals the following:

4. On September 10, 1959, only 55 days after petitioner had entered his plea and been sentenced, petitioner wrote a letter to the court requesting that his case be reopened on the ground that at the time of the commission of the offense and while in court he was "not in full possession of all normal mental faculties", citing as an example the fact that he pleaded guilty at the arraignment without counsel; the fact that he was not given a psychiatric examination prior to entering his plea despite the fact that it was the opinion of the prosecutors that he should have been given one.

5. On November 16, 1959, the court requested that petitioner be given a complete psychiatric examination. An examination was given petitioner and the report was forwarded to the court. The report indicated that petitioner was in the dull-normal range intellectually and seemed to have very limited personality resources; that petitioner was "an inadequate individual whose few defenses were easily overwhelmed by the frustrations of living"; that petitioner was found to be an alcoholic and immature, lacking control; that, however, he was not found to be psychotic either at the time the offense was allegedly committed, or during petitioner's plea and in fact petitioner's actions at the time of his plea were a reflection of the same impulsivity and impaired judgment which petitioner displayed at the time of the offense. The court did not reopen the case after receipt of this report.

ISSUES

1. Whether the State met its burden in showing (a) that petitioner voluntarily and intelligently waived his right to appointed counsel, and (b) that petitioner voluntarily and with

full understanding of his constitutional rights waived said rights and entered his plea of guilty.

2. Whether it was proper for the court to grant a writ of *coram nobis* in the instant case.

### ABSENCE OF AN OFFICIAL RECORD

In *Wong v. Among,* 52 Haw. 420, 477 P.2d 630 (1970), this court was faced with a factual situation similar to that of the instant case. The primary difference is that the case before the court today has a minimal record whereas in the *Wong* case there was no record at all. However, the minimal record in the instant case is not helpful.

### I. DID THE STATE CARRY THE BURDEN AS REQUIRED IN *WONG v. AMONG?*

(a) In *Wong v. Among, supra,* 52 Haw. at 424-25, and 477 P.2d at 633-34, we stated:

. . .[T]he incomplete record before us tells nothing, and to presume an accused's waiver of counsel from a silent record is constitutionally impermissible. . . .

Where the record is silent the respondents have the burden of proving that the petitioner voluntarily and intelligently waived his right to counsel. (Citations omitted.)

We are of the opinion that the State has failed to carry its burden in the instant case. The official record and the testimonial proceedings set forth failed to meet the requirements set forth in *Wong v. Among, supra.* There is no showing that the petitioner was fully aware of the ramifications of his refusing counsel, and the testimony does not indicate that the trial judge made an effort to explain what his rejection of counsel really entailed.[1] Without a proper showing that an

---

[1] Von Moltke v. Gillies, 332 U.S. 708, 724 (1948):

The fact that an accused may tell him [the judge] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad under-

effort in this regard was made, we cannot find that the petitioner voluntarily and intelligently waived his right to counsel as required by our decision in *Wong v. Among, supra*.[2]

(b) Acceptance of the guilty plea.

In *Wong v. Among, supra,* 52 Haw. at 425, and 477 P.2d at 634, we stated:

> The official record is silent and where it is silent the presumption is that the petitioner did not voluntarily and understandingly enter his pleas of guilty. . . . Since no justification for a guilty plea can be inferred from a silent record we hold that the respondents [State] had the burden of proving the validity of petitioner's pleas of guilty. . . . (Citations and footnote omitted.)

And,

> A plea of guilty in itself is a conviction and a simultaneous waiver of several important constitutional guarantees — the privilege against self-incrimination, a trial by jury, and the confrontation of one's accusers. Such a waiver is not constitutionally acceptable unless made voluntarily and with full understanding of the consequences. (Citations omitted.)

Based on the record herein, we are of the opinion that the State has failed to carry its burden of proving that petitioner did voluntarily and with full understanding of the consequences plead guilty and waived his constitutional rights of

---

standing of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

[2] Our opinion herein does not reach the issue of the standard of explanation required when a defendant of sub-normal intelligence stands accused. The facts of this case indicate that after committal to the State prison, the petitioner was given a psychiatric examination by order of the court. The examination revealed that petitioner was of dull-normal intellect, a classification which is below average intelligence.

We are of the opinion that where a defendant is known to be of sub-normal intelligence, the rule of law is that additional effort of explanation must be made by the court. *See* Westbrook v. Arizona, 384 U.S. 150 (1966); Rees v. Peyton, 384 U.S. 312 (1966). In the instant case, however, the minimum requirement of Wong v. Among, *supra,* has not been met and therefore petitioner's mental capacity is not in issue.

trial by jury, self-incrimination, and confrontation of his accusers.

Initially, the testimony given at the hearing on the petition does not indicate that petitioner was ever given a copy of the indictment against him.[3] Mr. Fong testified, ". . . As I recall, Lincoln Ishida was the prosecutor at that who presented the case. I don't remember whether he read the indictment. I believe he read the indictment to the defendant. . . ." The purpose of the indictment is to apprise the accused of charges against him, so that he may adequately prepare his defense, and to describe the crime charged with sufficient specificity to enable him to protect against future jeopardy for the same offense. *Gaither v. United States*, 413 F.2d 1061 (D.C. Cir. 1969). We are of the opinion that the mere reading of the indictment without further explanation and without providing him with a copy of said indictment does not fulfill the purpose for which the indictment is required. Without being able to study the nature of the charges levelled against him, no defendant can fully evaluate his legal position and subsequently enter an intelligent plea.

Secondly, the testimony given does not show that petitioner had a full understanding of what the charge of first degree murder entails. No testimony was given which indicated that petitioner was informed of the elements which must be proven by the State to establish a conviction for murder in the first degree. Without this knowledge the petitioner could not have made the decision to plead guilty with full knowledge of the consequences. *See Johnson v. Zerbst*, 304 U.S. 458 (1938).

Similarly, there was no testimony given which indicated that petitioner was informed of the defenses which were available to him. In the emotionally charged and confused state of petitioner at the time of the arraignment, the mere

---

[3] The record reveals that the only direct testimony in point was given by petitioner himself:

Q All right. Now, jumping forward to the time again at which you were arraigned before Judge Hewitt. At that time when you went before Judge Hewitt, did they hand to you a copy of the indictment against you?

A No, sir.

fact that Mr. Fong indicated that there may be defenses available was insufficient.

We are of the opinion that the accepting of a guilty plea requires that the court insure that a defendant receive the above cited information as a minimum requirement to the acceptance of a guilty plea in a first degree murder arraignment. All of these factors are critical to any accused who is contemplating entering a plea of guilty to a capital offense. We are of the further opinion that unless these minimum requirements are met, a defendant cannot enter a plea of guilty "voluntarily and with full understanding of the consequences." Thus, the test established by this court in *Wong v. Among, supra,* has not been satisfied.

## II. GRANTING OF THE WRIT OF *CORAM NOBIS.*

We are of the opinion that the court below erred in issuing a writ of *coram nobis* in place of a writ of habeas corpus which was applied for herein.

The writ of *coram nobis* is the proper remedy to correct errors of the most fundamental character where the petitioner has completed his sentence or is otherwise not in custody and circumstances compel such action to achieve justice. *United States v. Sullivan,* 278 F.Supp. 626, 630 (D. Haw. 1968). It is applied when there is an error of fact which is not in the record, and when no other remedy exists. *People v. Crawford,* 176 C.A.2d 564, 567, 1 Cal. Rptr. 811, 812 (1959).

In the instant case, petitioner remains in custody and has not completed his sentence. Furthermore, he does not allege any error of fact which is not in the record, and further fails to allege the lack of a remedy for the relief sought herein.

## CONCLUSION

The issuance of a writ of *coram nobis* is hereby set aside.

This case is remanded to the court below for the issuance of a writ of habeas corpus. However, petitioner shall remain in custody for further proceedings in the court below.

*Gerald Y. Y. Chang,* Deputy Attorney General *(Benjamin*

*M. Matsubara*, Deputy Attorney General, with him on the brief; *George Pai*, Attorney General, of counsel) for respondent-appellant.

*David W. Hall* (*Hart, Sherwood, Leavitt, Blanchfield* and *Hall* of counsel) for petitioner-appellee.