STATE OF HAWAII, Plaintiff-Appellee, *v.* RICHARD M. SWORD, Defendant-Appellant

NO. 10291

(CRIMINAL NO. 7906(2))

FEBRUARY 6, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

## OPINION OF THE COURT BY LUM, C.J.

This is an appeal from a jury conviction of one count of medical assistance fraud in violation of Hawaii Revised Statutes (HRS) § 346-43.5 (Supp. 1984).[1] Appellant's primary contention on appeal is that a fatal variance exists between the offense charged and the evidence adduced at trial. We agree and reverse.

---

[1] HRS § 346-43.5 (Supp. 1984) provides in pertinent part:
It is unlawful for any person to knowingly and wilfully make or cause to be made to the medical assistance program any false statement or representation of a material fact in any application for any benefit or payment for furnishing services or supplies, or for the purpose of obtaining greater compensation than that to which the person is legally entitled or for the purpose of obtaining authorization for furnishing services or supplies.

I.

On May 25, 1984, Appellant Dr. Richard Sword, a Maui psychologist, was indicted on thirty-two counts of Medicaid fraud. The indictment alleged that Appellant had knowingly and wilfully lied on Medicaid claim forms in order to receive unauthorized compensation. The jury acquitted Appellant of thirty-one of the counts and convicted him only of Count 19.

Counts 19 through 32 involved claims for therapy sessions with patient Anatta B. Count 19 specifically pertained to a claim form filed on July 21, 1983.[2] Appellant's allegedly false statement was that Dr. Jack Lewin was Anatta B.'s "referring physician" when no such referral had been made. Medicaid regulations provide that a psychologist's services are not compensable unless the patient has been referred by a practicing physician.

From the beginning of its investigation, the State's only theory was that Dr. Lewin had never heard of or referred Anatta B., and that while Appellant was aware of this, he nevertheless used Dr. Lewin's name in order to fraudulently obtain Medicaid payments.[3] On the July 21, 1983 claim form, Appellant had billed Medicaid for two therapy sessions with Anatta B.—one on June 2, 1983 and the other on July 19, 1983. Medicaid paid him $19 for each session.

Contrary to the State's claim, the evidence showed that Dr. Lewin had in fact referred Anatta B. to the Appellant in early June 1983.

---

[2]Count 19 of the indictment states:
On or about July 21, 1983, in the County of Maui, State of Hawaii, RICHARD M. SWORD, Ph.D., did knowingly and wilfully make or cause to be made to the Hawaii Medical Assistance (Medicaid) Program in an application for payment for furnishing services to patient Anatta B. false statements of a material fact, to wit, that patient Anatta B. was referred to him by Dr. Jack Lewin when in fact Dr. Jack Lewin had not made the referral, thereby committing the offense of Medical Assistance Fraud in violation of Section 346-43.5 of the Hawaii Revised Statutes.
Except for the dates involved, the allegations in Counts 20 through 32 were identical to those in Count 19. They named Dr. Lewin as Anatta B.'s referring physician, but involved claim forms filed after July 21, 1983.

[3]The State sought and obtained a grand jury indictment on this theory and then used it successfully to defeat a pretrial motion to dismiss the indictment. In his opening remarks to the jury, the State's attorney once again pressed the contention that Dr. Lewin had neither heard of ncr referred Anatta B. to the Appellant.

Anatta B., called as a surprise defense witness, testified that she obtained the disputed referral herself after Appellant had refused to treat her without it.[4]

After Anatta B.'s testimony on direct examination, the State changed theories. Its new contention was that Appellant provided therapy services on June 2, 1983 and then obtained the referral afterward.[5] In its closing arguments to the jury, the State contended that a retroactive referral was the same as having no referral at all.

The jury apparently found that Dr. Lewin's referral did not cover the June 2, 1983 therapy session, but did cover all subsequent therapy sessions.[6] On this basis, Appellant was convicted of Count 19 and acquitted of Counts 20 through 32.

## II.

The purpose of an indictment is "to apprise the accused of the charges against him, so that he may adequately prepare his defense, and to describe the crime charged with sufficient specificity to enable him to protect against future jeopardy for the same offense." *Carvalho v. Olim,* 55 Haw. 336, 344, 519 P.2d 892, 898 (1974). *See State v. Daly,* 4 Haw. App. 52, 54-55, 659 P.2d 83, 85 (1983).

A variance is a disagreement between the allegations in the indictment and the proof of some matter that is legally relevant to the charge. *Territory v. Coe,* 37 Haw. 601, 606 (1947). To be fatal, a variance must

---

[4]Anatta B. was produced as a surprise defense witness after the State attorney told the jury that she was unavailable. Over the State's objection, she testified in part as follows:

I went to see Dr. Sword, and before he could see me he said he needed a referral And I'm not sure if he mentioned Jack Lewin or I mentioned Jack Lewin, but I called Jack Lewin and asked him to refer me to Dr Sword. And he said that he didn't normally do that. And then he said that I needed to choose my own doctor because I needed help at the time. And I thought that Dr Sword could help me, that I had a rapport with him, and that I could talk to him. And then he said "All right."

And then I went to Dr. Sword and told him that Dr. Jack Lewin said "All right," and then I started seeing Dr. Sword.

[5]The precise date of the referral was unclear, but the testimony indicated that it came one to three days after the June 2, 1983 visit. The jury was not charged as to when a referral is required under the Medicaid regulations.

[6]The State in its answering brief concedes that Dr. Lewin did, in fact, refer Annata B. some time after June 2, 1983.

be both material to an essential element of the offense and prejudicial to a substantial right of the accused. *See State v. Nases,* 65 Haw. 217, 218, 649 P.2d 1138, 1139 (1982); *State v. Peters,* 44 Haw. 14, 352 P.2d 329, 331 (1959).

The State contends that the indictment stated each material element of the offense charged and was thus sufficient to apprise Appellant of what he had to meet in order to prepare his defense.

We agree with the State but the question is not the sufficiency of the indictment. Rather, the question is whether there is a fatal variance between the evidence proved and the material elements of the offense charged in the indictment. We hold that such a fatal variance occurred. Appellant was indicted on Counts 19 through 32 for allegedly using Dr. Lewin as a "referring physician" when no such referral had ever been made at all. At trial, the evidence showed that Dr. Lewin had made the referral shortly after June 2, 1983, before any of the disputed claim forms were filed. Any possibility of the actual referral date serving as the basis of criminal liability arose only as prosecutorial afterthought.[7]

The State's claim that a variance, if any, resulted in no prejudice to Appellant is equally without merit.

Reversed.

*Philip H. Lowenthal (Anthony L. Ranken* with him on the briefs) for Defendant-Appellant.

*Winfred K. T. Pong (George H. Yamamoto* with him on the brief) Deputy Attorneys General for Plaintiff-Appellee.

### DISSENTING OPINION OF WAKATSUKI, J., WITH WHOM NAKAMURA, J., JOINS

I respectfully dissent.

"A variance occurs when the proof introduced at trial differs materially from the facts alleged in the indictment." *United States v. Beeler,* 587 F.2d 340, 342 (6th Cir. 1978). "The general rule that allegations and

---

[7]The legal question of whether a referral may actually be applied retroactively for purposes of Medicaid reimbursement was not litigated in the trial below. The related question of whether a claim for services provided before the referral gives rise to the same criminal liability as having no referral at all was likewise not litigated below. We therefore make no rulings on these matters here.

proof must correspond is based on two requirements: '(1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense.'" *United States v. Phillips,* 625 F.2d 543, 545 (5th Cir. 1980). (Citations omitted.)

"'The evaluation of a claim of variance . . . involves application of a two-step analysis: first, to ascertain whether there was in fact a variance between indictment and proof, and second, to determine whether the variance was prejudicial.'" *Id.* at 545 (quoting *United States v. Canales,* 596 F.2d 664, 670-71 (5th Cir. 1979)). "If there is only a single set of facts . . . , the variance is reversible error only if it has affected substantial rights, and it is not fatal unless the defendant could not have anticipated from the indictment what evidence would be presented at trial or unless the conviction based on an indictment would not bar a subsequent prosecution." 3 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 516, at 27 (1982). (Footnotes omitted.)

The evidence adduced at trial by the State did not differ materially from the facts alleged in the indictment. Dr. Lewin was called by the State to testify. He said that although someone else in his staff may have made the referral of Anatta B. to the appellant, he did not remember doing so and that he had no records of her indicating that she was a patient of his. The appellant called Anatta B. as a witness to specifically negate the State's allegation that no referral was made.

The majority concludes "the jury apparently found that Dr. Lewin's referral did not cover the June 2, 1983 therapy session, but did cover all subsequent therapy sessions. On this basis, Appellant was convicted of Count 19 and acquitted of counts 20 through 32." This conclusion is speculative because the jury may have rendered the guilty verdict as to Count 19 on the basis of Dr. Lewin's testimony and *not* on the basis of Anatta B.'s testimony as the majority believes. Arguendo, the jury may have then relied on Anatta B.'s testimony in rendering verdicts of not guilty as to Counts 20-32 since in all likelihood a referral was obtained sometime after June 2, 1983.

On cross-examination by Mr. Yamamoto, the attorney for the State of Hawaii, the following answers were provided by the appellant:

Mr. Yamamoto: Now, when did you become a medicaid provider?

Appellant: I believe they granted that to me when I got - - from

the date of my license here on December 16, 1982.

Mr. Yamamoto: And when you became a Medicaid provider, you are aware that as a psychologist you could treat Medicaid patients only upon referral from a physician, is that correct?

Appellant: That's correct.

Tr. August 23, 1984 at 10.

Appellant undeniably admits knowledge of the requirement placed on him by the Administrative Rules[1] of the Dept. of Social Services and Housing in regards to providing psychological service under the Hawaii State Medicaid program. Any reasonable interpretation of § 17-749-15(a)(5) plainly informs one that a referral from a practicing physician must be obtained *before* providing psychological services. An interpretation of § 17-749-15(a)(5) that results in the inference that a later referral would also satisfy the requirement in the rule would render § 17-749-15(a)(5) totally useless and of no effect.

Appellant has not shown that the variance, if any at all, affected his substantial rights or that it was prejudicial. Nor does the record reveal that appellant was somehow unable to present his defense or that he was unjustly surprised by the evidence offered by the State at trial. Appellant, having failed to convince the jury on his defense to the allegation in the indictment, now claims that there is a fatal variance.

---

[1]§ 17-749-15(a) *Psychiatric service and treatment.*

(a) Psychiatric service shall be allowed where:

(1) It is provided under an individualized treatment or diagnostic plan which may be revised during treatment if necessary. Psychiatric service furnished without a planned program of therapy does not constitute treatment and is not reimbursable;

(2) There is a reasonable expectation that service will improve the patient's condition. If the patient's condition is not altered after the authorized outpatient visits in the initial six month period of treatment the frequency and number of visits requested may be reduced;

(3) A psychiatrist shall serve as a source of information and guidance when psychiatric service is provided by authorized mental health therapeutic teams;

(4) Drug management alone shall not be considered psychiatric care but shall be considered general medical care. Payments for drug management shall be made to:

(A) Authorized outpatient clinics for the cost of the drugs; or

(B) Psychiatrists at a general medical visit rate when accepting referrals for the purpose of prescribing psychiatric medications or evaluation of psychiatric medications; and

(5) Psychological service provided by an authorized psychologist shall be limited to patients that are referred to a psychologist by a practicing physician, and to providing only the service requested by the physician.

The evidence was substantial that no referral was made by Dr. Jack Lewin prior to June 2, 1983, and to merely refer to it or label it as a "late" referral also does not create a fatal variance. Furthermore, I question the fairness of allowing the Appellant to rely on the referral (by Dr. Jack Lewin) to support his contention that a fatal variance occurred as to Count 19, while overlooking the fact that this same referral also enabled the jury to render verdicts of not guilty as to Counts 20-32.