881 P.2d 533

**In the Interest of Jane DOE, Born on May 26, 1979, Juvenile–Appellant.**

**No. 17277.**

Supreme Court of Hawai'i.

Oct. 6, 1994.

Todd W. Eddins, Deputy Public Defender, Honolulu, for juvenile-appellant.

Loretta A. Matsunaga, Deputy Prosecuting Atty., City and County of Honolulu, Honolulu, for appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

This appeal involves a thirteen-year old girl (Doe) who admitted in the Family Court of the First Circuit to eight petitions of running away, one petition of truancy and one petition of assault in the third degree.[1] Before admitting to the petitions against her, Doe waived her right to counsel. After her admissions, the family court placed Doe on probation.

Doe later attempted to withdraw her admission to the petition for assault, contending that she had not knowingly and voluntarily: (1) waived her right to counsel; and (2) admitted to the petition. The family court denied Doe's motion and also adjudicated her as being in violation of her probation by a preponderance of the evidence because she had run away from home after being placed on probation.

Because we hold that Doe did not knowingly and voluntarily waive her right to coun-

sel, we vacate the orders: (1) denying her motion to withdraw her admission and set aside her sentence; (2) adjudicating her a probation violator; (3) denying her motion to reconsider the denial of her motion to withdraw her admission and set aside her sentence; and (4) denying her motion to reconsider her adjudication as a probation violator, and remand for further proceedings.

## FACTS

On March 25, 1993, Doe appeared before the family court accompanied by her mother. The court informed Doe that a total of ten petitions had been filed against her. The court then asked Doe whether she wished to admit to or deny the petitions against her. Doe responded that she wished to admit.

Prior to accepting her admission, the court asked Doe several questions and determined that Doe: (1) was thirteen; (2) had not had any alcohol or drugs in the two days preceding the hearing; (3) had not taken any pills or medication; (4) could read, write, and understand English; and (5) was receiving counseling with the Children's Team. Thereafter, the court informed Doe of her rights.

Initially, the court informed Doe that she had the right to remain silent. The court also told Doe that she had the right to an attorney and that it could appoint an attorney to represent her if she could not afford one.

Doe, however, informed the court that she did not want an attorney. The court then asked whether Doe knew what an attorney could do for her. When Doe responded in the negative, the court explained that:

> a lawyer could tell [her] what the law is and could explain what's gonna happen in Court to [her]; could also point out ways where [she] might be able to get off of the charges and could also point out ways where [she] might get a lesser punishment.

After informing Doe as to the possible role of an attorney, the court again inquired wheth-

---

1. The petition alleged that Doe violated or attempted to violate Hawai'i Revised Statutes (HRS) § 707–712(1)(a) (1985) which provides that "[a] person commits the offense of assault in the third degree if he ... [intentionally], knowingly, or recklessly causes bodily injury to another person[.]"

er Doe wanted an attorney. Doe responded that she did not.

The court then explained that Doe had the right to a trial where: (1) the State would have to call witnesses to prove the charges against her; (2) she would be able to see and hear the witnesses as well as ask them questions; (3) she had the right to call her own witnesses to support her side of the story; and (4) she herself could testify. Doe, however, stated that she did not want a trial.

The court also informed Doe that it had the authority to issue several orders with the possibility that Doe would be sent to a juvenile detention home until she reached the age of nineteen. Doe indicated that she understood.

Finally, the court asked Doe whether she had been promised anything or had been pressured or threatened into admitting to the petitions. Doe responded that she had not.

Thereafter, the court separately addressed each of the petitions. The first petition alleged that Doe had committed an assault in the third degree. When asked to relay the events leading up to the charge, Doe replied that the victim (Melissa) told others that she (Melissa) could "beat up" Doe. Thus, Doe challenged Melissa to a fight. Melissa, however, declined. Doe then combed Melissa's hair with dirt and water.

The next day, Doe threw Melissa's books out of their classroom. Later during recess, Doe's two friends started pushing and slapping Melissa across the face, while Doe swore at Melissa and again combed Melissa's hair. When asked how she thought Melissa felt, Doe responded, "hurt, angry."

Doe then admitted to eight petitions of running away and one petition of truancy. The court thereafter found a factual basis for all ten petitions and that Doe had knowingly and voluntarily waived her rights. Thus, the court adjudicated her a law violator on the assault petition, and a person in need of supervision for the runaway and truancy petitions. Doe was then placed on probation, ordered to participate in a drug and alcohol assessment, and ordered to write a letter of apology to Melissa.

Doe, however, violated probation approximately two weeks later when she left home without permission and remained away until she was apprehended approximately one week later. Thus, the State filed a petition alleging a violation of probation against Doe.

Doe then filed a motion to withdraw her admission to the petition for assault in the third degree, to set aside her sentence and to reset the case for trial.[2] Represented by a deputy public defender, Doe argued that she could not intelligently and voluntarily waive her rights without representation by counsel. Alternatively, Doe argued that she did not intelligently waive her rights because: (1) she did not understand the nature of assault in the third degree; (2) the elements of assault were never provided to her; and (3) she was not asked whether she understood the privilege against self-incrimination, the right to confront witnesses, the right to testify and call witnesses, the right to have an attorney present, and the functions of an attorney.

A hearing was held on Doe's motion to withdraw her admission on May 20, 1993. At the hearing, Doe testified that she and her mother spoke with her probation officer, Nathan Foo (Foo), for about an hour prior to the March 25 hearing. According to Doe, Foo told her that she had the right to an attorney and that the court could appoint an attorney for her if she could not afford one. Foo also told Doe that she should get an attorney, because an attorney could deny the charges against her and "stick up" for her. Although Doe also testified that she was not paying attention at the March 25 hearing, she admitted that she looked directly at the judge and answered all of the judge's questions at the March 25 hearing.

During the May 20, 1993 hearing, the family court orally denied Doe's motion to withdraw her admission and proceeded to trial on the petition for Doe's alleged probation violation. Thereafter, the court, by a preponderance of the evidence, adjudicated Doe a probation violator. Thus, the court continued

---

2. The motion to withdraw included only the petition for assault in the third degree. Thus, Doe has not contested the petitions for truancy and running away.

Doe's probation for one year, continued her placement at Kahi Mohala Hospital, and ordered her to remain in counseling until she was clinically discharged.[3]

On June 8, 1993, Doe filed a motion for reconsideration of the court's adjudication of her as a probation violator, contending that the family court used the incorrect burden of proof. Doe also filed a motion to reconsider the denial of her motion to withdraw her admission, set aside her sentence, and reset her case for trial. Doe again argued that the waiver of her constitutional rights was neither knowingly nor voluntarily made.

The family court denied both motions on June 15, 1993, and Doe timely appealed.

## DISCUSSION

### I. *A Minor May Waive the Right to Counsel*

■ It is undisputed that a minor is entitled to counsel in a law violation proceeding. *Medeiros v. State*, 63 Haw. 162, 163, 623 P.2d 86, 87 (1981) (citing *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). Doe, however, contends that the Hawai'i Constitution mandates that a minor's representation by counsel cannot be waived, or, at a minimum, requires that a minor's waiver of the right to counsel is invalid unless the minor has consulted with counsel prior to the waiver.

We, however, previously addressed this issue in *Medeiros* and held that a minor may validly waive the right to counsel if such waiver is voluntarily and intelligently undertaken. *Id.* at 163, 623 P.2d at 87. Notably, in *Medeiros*, the minor was at no time represented by counsel. *Id.* Nevertheless, based upon the totality of circumstances, we affirmed the trial court's conclusion that the minor had failed to show by a preponderance of the evidence that he did not voluntarily and intelligently waive his right to counsel. *Id.* Thus, because we previously addressed Doe's specific point of error, Doe asks us to overrule *Medeiros*. We decline to do so.

In support of her argument, Doe cites to the Institute for Judicial Administration—American Bar Association, Juvenile Justice Standard Project, *Standards Relating To Pretrial Court Proceedings* § 5.1 commentary at 90–91 (1980), for the proposition that a minor's right to counsel can never be validly waived.

The commentary, however, also noted that "[the] overwhelming majority of courts reject the view that a juvenile alone is per se incompetent to waive counsel. They apply the 'totality of circumstances' test to determine the validity of a waiver." *Id.* at 91.

This totality of circumstances approach has also been addressed by the United States Supreme Court in *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197, *reh'g. denied*, 444 U.S. 887, 100 S.Ct. 186, 62 L.Ed.2d 121 (1979). The Supreme Court stated that the totality of circumstances approach is an adequate way to determine whether a minor has validly waived his or her right to counsel in an interrogation. Furthermore, the Supreme Court found "no persuasive reasons why any other approach [would be] required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so." *Id.*

In *Fare*, by a five-to-four decision, the Supreme Court held that a minor's statements made during an interrogation were admissible against the minor if, based upon the totality of circumstances, the minor knowingly and voluntarily waived his or her rights to remain silent and to have the assistance of counsel. *Id.* at 724–25, 99 S.Ct. at 2571–72.

Although not specifically addressing the issue of waiver, Justice Marshall in his dissent, noted that the California Supreme Court found that probation officers were "well suited to assist a juvenile 'on such matters as to whether or not he should obtain an attorney[.]' " *Id.* at 730, 99 S.Ct. at 2574 (Marshall, J., dissenting; Brennan and

---

**3.** After Doe was apprehended for violating her probation, she was placed in several youth facilities, and had been placed at Kahi Mohala Hospital at the time of the hearing.

Stevens, JJ., joining) (citation omitted).[4] Thus, Justice Marshall's dissent impliedly recognized that a minor could waive his right to counsel.

In the instant case, Doe argues that we should not rely on "a family court judge's discretionary review of the 'totality of the circumstances,'" but instead should require mandatory representation of counsel in juvenile proceedings, or to presume a minor's waiver of counsel is invalid unless the minor has consulted with counsel prior to waiving his or her rights.

However, as stated by the Supreme Court in *Fare:*

> [courts] repeatedly must deal with [the] issues of waiver with regard to a broad variety of constitutional rights. There is no reason to assume that such courts— especially juvenile courts, with their special expertise in this area—will be unable to apply the totality-of-the-circumstances analysis so as to take into account those special concerns that are present when young persons, often with limited experience and education . and with immature judgment, are involved.

*Fare,* 442 U.S. at 725, 99 S.Ct. at 2572.

Doe, nevertheless, contends that mandatory counsel for minors "takes account of the immaturity of juveniles, their lack of legal knowledge, their lack of understanding as to their constitutional rights, [and] their susceptibility to adult coercion in the daunting confines of a courtroom[.]" These factors, however, are taken into consideration by the family court when determining whether a minor's waiver is valid based upon the totality of circumstances.

Accordingly, although the waiver of a minor's right to counsel should be reviewed with great care, the right may nevertheless be waived if, based upon the totality of circumstances, the waiver is knowing and voluntary. *Medeiros,* 63 Haw. at 163, 623 P.2d at 86. Moreover, it is not necessary that a minor consult with counsel prior to waiving his or her right to counsel, because the family court is capable of sufficiently and effectively informing a minor of his or her rights and applying the totality of circumstances analysis. *Fare,* 444 U.S. at 725, 99 S.Ct. at 2572. We, therefore, decline to overrule *Medeiros.*

## II. *Doe's Waiver of Counsel*

■ Doe's waiver of her right to counsel was not knowing and voluntary because the family court failed to set forth the nature of the assault charge against her.[5] Specifically, the court neither read the petition, nor explained the elements necessary to establish the charge of assault. The court simply asked Doe to relay the events leading up to the charge.

While the record does indicate that Doe received all ten petitions against her, and that she stated that she understood each of the charges, this is insufficient to establish that Doe knowingly and voluntarily waived her right to counsel.

> The fact that an accused may tell ... [the judge] that he [or she] is informed of his [or her] right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of *the nature of the charges,* the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

*Carvalho v. Olim,* 55 Haw. 336, 342–43 n. 1, 519 P.2d 892, 897 n. 1 (1974) (citing *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct.

---

4. Justice Powell, who dissented separately, also did not reach the issue of waiver. *Id.* at 731–34, 99 S.Ct. at 2575–77 (Powell, J., dissenting).

5. Although Doe has not raised the family court's failure to explain the nature of assault as error with regard to her waiver of counsel, we may *sua sponte* notice plain error where it affects Doe's substantial rights. *State v. McGriff,* 76 Hawai'i 148, 155, 871 P.2d 782, 789 (1994).

316, 323, 92 L.Ed. 309 (1948)) (emphasis added); *see also State v. Dickson,* 4 Haw.App. 614, 673 P.2d 1036 (1983) (holding that a trial court must examine the totality of circumstances, including whether defendant was aware of the nature of the charge and the elements of the offense, in order to determine whether waiver of counsel is made voluntarily and intelligently). Thus, although Doe stated that she understood the petitions against her, in order to determine whether Doe's waiver of counsel was valid, the family court should have inquired into the extent of her understanding. This is especially true in light of the fact that Doe was thirteen years old and did not discuss the petitions with an attorney prior to her appearance in court.

Moreover, it becomes clear that Doe did not understand the charge against her because the petition alleged a single violation on or about November 23, 1992. However, in her explanation of the assault, Doe relayed the events of two separate days. Thus, according to Doe's own recitation of the events, she herself was not clear as to which incident the petition referred.

Accordingly, even though Foo and the family court adequately explained the role of an attorney, Doe did not knowingly and voluntarily waive her right to counsel because she was never informed of the nature of assault in the third degree. *Carvalho,* 55 Haw. at 342–43 n. 1, 519 P.2d at 897 n. 1.

### CONCLUSION

We hold, based on the totality of circumstances, that Doe did not validly waive her right to counsel. Therefore, we vacate the family court's order denying Doe's motion to withdraw her admission with respect to the assault petition and the court's subsequent order adjudicating her a probation violator and remand the case for further proceedings. Consequently, we find it unnecessary to address Doe's remaining points of error.[6]

---

**6.** Doe also argued on appeal that: (1) she did not validly admit to the assault petition; (2) there was no factual basis upon which the family court could accept her admission; and (3) the family court applied the incorrect standard when it adjudicated Doe a probation violator by a preponderance of the evidence.