STATE OF HAWAII, Plaintiff-Appellee, *v.* IAN DICKS, Defendant-Appellant

NO. 5651

STATE OF HAWAII, Plaintiff-Appellee, *v.* DESIREE ANNE HEDGEPETH, Defendant-Appellant

NO. 5652

APRIL 30, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR, JJ., AND CIRCUIT JUDGE SODETANI ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY RICHARDSON, C.J.

Defendants-appellants Ian Balfour Dicks (hereinafter, Dicks) and Desiree Anne Hedgepeth (hereinafter, Hedge-

peth), were arrested shortly after midnight on February 5, 1974 at the Landing Restaurant, Kahului, Maui, and were thereafter charged with Burglary in the Second Degree.[1] In the afternoon of the same day, they appeared before a trial judge of the second circuit for plea and arraignment. At that hearing each defendant waived counsel and waived indictment. Each acknowledged his/her previously signed "Defendant's Written Plea of Guilty" and each entered a guilty plea. After their guilty pleas had been accepted by the court, Dicks stated that he entered the restaurant because he "was pretty hungry" and Hedgepeth stated she went into the restaurant "for food." A pre-sentence report was ordered and a date for sentencing was set.

Prior to sentencing, Dicks and Hedgepeth, through counsel, moved for an order vacating acceptance of their respective pleas of guilty. After a hearing upon such motion (hereinafter, motion hearing), the motion was denied by the trial judge. The defendants were subsequently sentenced.

Two questions are raised on appeal: (1) Whether the trial judge erred in accepting the defendants' waivers of counsel and (2) whether the trial judge abused his discretion in denying the defendants' motion to withdraw their guilty pleas.

### I. THE TRIAL JUDGE DID NOT ERR IN DETERMINING THAT THE PETITIONERS VOLUNTARILY AND INTELLIGENTLY WAIVED THEIR RIGHTS TO APPOINTED COUNSEL

The Sixth Amendment of the U.S. Constitution guarantees the right to counsel for a criminal defendant. This right is one "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319 (1937), and applicable to the states through the due process clause of the Fourteenth Amendment. Article I, Section 11 of the Hawaii State Constitution likewise guarantees an accused the right to counsel.

---

[1] HRS § 708-811 reads:

(1) A person commits the offense of burglary in the second degree if he intentionally enters or remains unlawfully in a building with intent to commit therein a crime against a person or against property rights.

The right to counsel is waivable when it is voluntarily and intelligently undertaken. *Johnson v. Zerbst,* 304 U.S. 458 (1938). Courts do not presume acquiescence in the loss of fundamental rights and such a presumption in the light of a silent record is not constitutionally permissible. *Wong v. Among,* 52 Haw. 420, 477 P.2d 630 (1970); *Carvalho v. Olim,* 55 Haw. 336, 519 P.2d 892 (1974).

Whether an accused has effectively waived his right to counsel depends largely on the facts and circumstances of the particular case. *Johnson v. Zerbst, supra; Carpentier v. Lainson,* 248 Iowa 1275, 84 N.W.2d 32 (1957). Among the probative factors bearing on the question are the age, education, and mental capacity of the defendant, his background and experience, and his conduct at the time of the alleged waiver. 21 Am. Jur.2d § 317 at 346, *Johnson v. Zerbst, supra; Carpentier v. Lainson, supra.*

Both defendants indicated in court that they wished to waive their rights to a lawyer and proceed. The trial judge questioned them extensively about their waivers. He asked whether they had a lawyer or wished to have a lawyer, and whether they understood they had a right to a lawyer. He informed them that if they wanted a lawyer and could not afford one, that one would be provided. He asked them whether they were absolutely certain that they wished to proceed without a lawyer. In assessing their competency to waive counsel, he asked about their ages, educational backgrounds, and experience in court. Dicks said that he was 20 years of age, a graduate of Vanderbilt University, and had never been in court before. Hedgepeth said that she was 18 years of age, a student at Maui Community College, and had never been in court. The defendants impressed the trial judge as having "superior ability" and "apparently able to think and decide things for [themselves]."

The defendants said that they understood the information that had been read to them, the charge, the maximum sentence and fine which could be imposed, and that sentencing was entirely up to the court. There was no indication that they had been pressured or misled in any way.

In determining the legal adequacy of waiver of counsel, the question is whether, considering the totality of the circumstances, the waiver was voluntarily and intelligently undertaken. In view of the above and the record as a whole, the trial judge did not err in determining that the defendants voluntarily and intelligently waived their rights to counsel and in accepting their waivers.

## II. THE TRIAL JUDGE DID NOT ABUSE HIS DISCRETION IN DENYING THE DEFENDANTS' MOTION TO WITHDRAW THEIR GUILTY PLEAS

The defendants assert that the trial judge erred in denying their motions for withdrawal of their guilty pleas because such pleas were not knowingly and understandingly entered. When a defendant has pleaded guilty in a criminal case, it is within the discretion of the trial court to permit the plea to be withdrawn and in the absence of a clear abuse of that discretion, the appellate court will not interfere. 20 A.L.R. 1445, 66 A.L.R. 628, and supplementing cases; *Knaub v. State,* 443 P.2d 44 (Alas. 1968); *State v. Defoy,* 109 Ariz. 159, 506 P.2d 1053 (1973); *In re Brown,* 108 Cal. Rptr. 801, 511 P.2d 1153 (1973); *State v. Dunham,* 213 Kan. 469, 517 P.2d 150 (1972); *Jurgenson v. State,* 166 Neb. 111, 88 N.W.2d 129 (1958); *Lauen v. State,* 515 P.2d 578 (Okl. Cr. 1973); *State v. Burnett,* 228 Or. 556, 365 P.2d 1060 (1961).

It is a constitutional requirement that a trial judge ensure that a guilty plea be voluntarily and knowingly entered. *Boykin v. Alabama,* 395 U.S. 238 (1969); *Carvalho v. Olim, supra; Wong v. Among, supra.* Rule 11 of the Hawaii Rules of Criminal Procedure likewise mandates that the trial court "shall not accept the [guilty] plea without first determining that the plea is made voluntarily with understanding of the nature of the charge." It is error when a court does not fulfill these requirements and a clear abuse of discretion when a trial court refuses to allow the withdrawal of pleas tainted by such error. On the other hand, if the accused, with full knowledge of the charge against him and of his rights and the consequences of a plea of guilty, enters such a plea under-

standingly and voluntarily, the court may, without abusing its discretion, refuse to permit him to withdraw the plea.

The defendants do not contend that their pleas were made without knowledge of the consequences of their pleas or involuntarily. The record does disclose that the trial court informed the defendants of the constitutional rights waived by a guilty plea and the maximum sentence and fine which the court could impose. The record also indicates that the trial judge was solicitous in assuring the voluntariness of their pleas.

The defendants, at the motion hearing and on appeal, complain that they did not understand the nature of the charge when they entered their guilty pleas. More specifically, they allege that they did not understand the specific intent element of the burglary charge.

At arraignment, the information was read to each of the defendants. The informations charged:

That on or about the 5th day of February, 1974 at Kahului, ... [the accused] did intentionally enter or remain unlawfully in a building, to wit, the Landing Restaurant, with intent to commit therein a crime against property rights, thereby committing the offense of Burglary in the Second Degree . . . .

After the reading of the information to Dicks, the trial court questioned him:

"Q Mr. Dicks, do you have a copy of this charge—this information?

"A Yes, I do.

"Q Did you understand what was read to you right now?

"A Yes, sir.

"Q You understand that basically you are being charged with entering the building — the Landing Restaurant on or about February 5, 1974, in Kahului, with intention to commit a crime against property rights there?

"A Yes, sir.

"Q And that this constitutes burglary, a charge of Burglary in the Second Degree.

"A  Yes, sir."

After the information respecting Hedgepeth was read, the trial judge addressed her:

"Q  Miss Hedgepeth, did you understand the charge now?

"A  Yes.

"Q  Did you understand basically that the charge is Second Degree Burglary, and that you are to be charged that on or about February 5th, 1974, at Kahului, for entering the restaurant called 'The Landing Restaurant' with intent to commit a crime against property rights; you understand that?

"A  Yes."

The judge also questioned each defendant about his "Defendant's Written Plea of Guilty," which stated, in part:

"1.  I plead guilty to the charge of burglary in the second degree.

"2.  I have a copy of the information in this case.

"3.  I have read it carefully or I have had it read to me.

"4.  I understand the charges against me."

Each defendant indicated that there was nothing in the written plea which they did not understand. Once the guilty pleas had been accepted, a factual basis for the pleas was ascertained when Dicks volunteered that he had entered the restaurant because he was "pretty hungry" and Hedgepeth indicated that her entry was "for food."

The defendants argue that the mere reading of the information and the trial judge's explanation, which they characterize as a brief paraphrasing of the charge, were inadequate to assure that the defendants understood the charge against them.

The Constitution and our Rules of Criminal Procedure do not prescribe any litany or ritual to which trial judges must comply. They do require that this court find on review that the defendants understood the nature of the charge against them. A record that discloses that the elements of the crime charged were clearly outlined by the trial court in indisputably understandable terms would, of course, facilitate our review since

an appeal under such circumstances would be clearly frivolous.[2] When, as in the instant case, the elements of the charge are stated in statutory terms with which a layman may or may not be familiar, we must undertake a more rigorous examination of the record in order to determine whether the defendants in fact understood the nature of the charge.

We have scrutinized the record and have determined that it supports a finding that the defendants understood the charges against them, consistent with their representations in their written pleas and at arraignment.

The record is clear as to defendant Hedgepeth. At the motion hearing, while repudiating her former testimony that they entered the Landing for food, Hedgepeth indicated that she understood the burglary charge and its intent element. On cross-examination by the prosecuting attorney, the following exchange occurred:

"Q At the time that you entered the plea of guilty to Burglary in the Second Degree, did you know what burglary meant?

"A Yes.

"Q So when you entered a plea of guilty to Burglary in the Second Degree, you in fact knew that we were charging you with having stolen something, or intending to have taken something; right?

"A No. I told everybody what happened, and there wasn't an intent to take anything.

"Q I am not asking you whether there was an intent at the time. I am asking you if you understand what burglary was, period.

"A Yes.

"Q Okay. And it was your understanding that that meant an intent to take something?

"A Yes.

Unlike defendant Hedgepeth, defendant Dicks did not admit that he understood the charge at the motion hearing.

---

[2] Thus it would be helpful to this reviewing court for a trial judge to outline for the defendant the basic legal elements of the crime in language comprehensible to a lay person, much as he would in instructions to a jury.

However, his testimony at that time, in conjunction with his earlier representations at the arraignment, support the determination that he understood the charge.

The following admissions by Dicks at the motion hearing permit the inference that at the arraignment Dicks understood the charge to mean entry with an intent to take or steal food. He admitted that he told the arresting officers that he had entered the Landing because he was hungry and wanted something to eat. He admitted knowing that, at the time of charging, the police and prosecutor accordingly believed that he had entered with an intent to steal food. He admitted to trusting the prosecutor to fit the charge to what they did.

Moreover, on both direct and cross-examination, Dicks admitted that, prior to arraignment, he had asked the prosecuting attorney if the burglary charge could be reduced to breaking and entering.

Finally, the general tenor of Dicks' testimony at the motion hearing may well have raised doubts in the trial judge's mind about the trustworthiness of the defendant's representation that he did not understand the charge. In his cross-examination of Dicks, the prosecutor elicited testimony inconsistent with Dicks' direct testimony and successfully impeached his testimony in certain respects. Many of Dicks' responses on cross-examination may have appeared evasive to the trial judge, an example of which occurred during an exchange between the prosecuting attorney and Dicks:

"Q  You thought you were being charged with a petty crime, right?

"A  Yeah.[5]

"Q  But you never asked what that crime was?

"A  Uh, yeah. We were told that it was Burglary in the Second Degree, and what you just read me [the information], just that.

---

[5] This response by Dicks is inconsistent with earlier testimony when, in response to the question "You understood, didn't you, that this was a very serious offense you were being charged with," Dicks responded by saying "Right, but I didn't understand the technicality was because we wanted something to eat."

"Q And it is your sworn testimony that I did not ask, or did not tell you that time we were at the police station on our second meeting that a crime against property rights meant that stealing food in this particular case?

"A I am not saying that you didn't say that. I am saying that I don't remember. I don't remember that — registering that in my mind."

In light of the foregoing, we are of the opinion that the trial judge did not err in determining that the defendants understood the charge against them at the time they entered their guilty pleas and therefore did not abuse his discretion in denying their motion to withdraw their pleas.

Affirmed.

*Philip Lowenthal*, Deputy Public Defender (*Donald K. Tsukiyama*, Public Defender, with him on the briefs), for defendants-appellants.

*Steven R. Scott*, Deputy County Attorney (*Arthur T. Ueoka*, County Attorney, with him on the brief), for plaintiff-appellee.

### DISSENTING OPINION OF KOBAYASHI, J., WITH WHOM CIRCUIT JUDGE SODETANI JOINS

I dissent.

As the majority correctly declares, this court will not interfere with a trial judge's denial of a motion to withdraw a guilty plea in the absence of a clear abuse of discretion. However, in view of three factors, namely, the questionable circumstances under which the trial judge accepted the defendants' guilty pleas, the plausibility of the defendants' explanation of their mistaken beliefs in making their pleas, and the timeliness of defendants' motion, I believe that the trial judge clearly abused his discretion in denying defendants' motion to withdraw their pleas.

### I. CIRCUMSTANCES UNDER WHICH TRIAL JUDGE ACCEPTED DEFENDANTS' GUILTY PLEAS

At the motion hearing defendants Dicks and Hedgepeth

called attention to the questionable circumstances leading up to and surrounding the acceptance of their guilty pleas. The circumstances of this case which I view with greatest concern are: the swiftness of the entire proceeding from arrest to acceptance of pleas; the fact that defendants were without counsel; and the relatively perfunctory explanation of the charges given to the defendants.

The swiftness with which defendants' pleas of guilty were accepted was striking. Arrest took place shortly after midnight. Before noon of that same day, after a virtually sleepless night, each defendant had signed a waiver of indictment and a written plea of guilty to a felony. Shortly thereafter, they appeared before the trial judge for arraignment and soon thereafter the trial judge accepted their pleas of guilty. The entire proceeding took only thirteen hours.

In view of the felony charges, the gravity of a guilty plea and the attendant waivers of constitutional rights,[1] I believe that the thrust of Section 1.3(b) of the AMERICAN BAR ASSOCIATION PROJECT ON MINIMUM STANDARDS FOR CRIMINAL JUSTICE, *Standards Relating to Pleas of Guilty* is applicable to situations such as this one. This section provides in part:

1.3 Aid of counsel; time for deliberation.

. . . .

(b) A defendant without counsel should not be called upon to plead to a serious offense until a reasonable time, set by rule or statute, following the date he was held to answer. When a defendant without counsel tenders a plea of guilty or nolo contendere to a serious offense, the court should not accept the plea unless it is reaffirmed by the defendant after a reasonable time for deliberation, set by rule or statute, following the date the defendant received the advice from the court required in section 1.4.

---

[1] Carvalho v. Olim, 55 Haw. 336, 343, 519 P.2d 892, 897 (1974), citing Wong v. Among, 52 Haw. 420, 425, 477 P.2d 630, 634 (1970):

A plea of guilty in itself is a conviction and a simultaneous waiver of several important constitutional guarantees — the privilege against self-incrimination, a trial by jury, and the confrontation of one's accusers. . . .

The commentary which accompanied the proposed draft of Section 1.3(b) reads in part:

> The thrust of the above standard . . . is that even if the defendant has effectively waived counsel he nonetheless should not be hurried through the plea of guilty process without sufficient time to consider his decision. [ABA Standards at 23]

A number of appellate courts have expressed this same concern about "too swift" acceptances of guilty pleas, especially from young, inexperienced defendants. *De Meerleer v. Michigan*, 329 U.S. 663 (1947); *Walker v. State*, Okla. Cr., 501 P.2d 218 (1972); *Hoag v. State*, Okla. Cr., 483 P.2d 753 (1971). These appellate courts cited the haste, in which a defendant's guilty plea was accepted, as a significant factor contributing to the reversal of the trial court's acceptance of, or refusal to allow withdrawal of, defendant's guilty plea. Likewise, I am deeply concerned about the hasty manner in which the guilty pleas were accepted from these young, inexperienced and unrepresented defendants. My deepest concern, however, is this court's sanctioning such a practice.

The fact that defendants were without counsel, by itself, should have alerted the trial judge to the substantial possibility that the guilty pleas were not entered knowingly and understandingly. The extremely critical nature of pleading guilty to a serious crime without assistance of counsel is well expressed by legal commentators.[2] I believe that to be consistent with our American principles of ordered liberty, justice and fairness, considerable leeway, in favor of allowing withdrawal of pleas entered without benefit of counsel, must be given.[3] Some jurisdictions have, in fact, enacted laws which

---

[2] *See e.g.* Note, *Pre-Sentence Withdrawal of Guilty Pleas in Federal Courts*, 40 N.Y.U. L. REV. 759, 767 (1965), and Note, *Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas*, 112 U. PA. L. REV. 865, (1964).

[3] *See generally* Herbert v. Louisiana, 272 U.S. 312, 316; Poole v. United States, 250 F.2d 396, 400 (D.C. Cir. 1957); *cf.* United States v. Young, 424 F.2d 1276 (3d Cir. 1970).

give statutory protection to defendants who, like defendants Dicks and Hedgepeth, so entered their guilty pleas.[4]

Additionally, considering the highly technical nature of the specific-intent element of burglary, the trial judge's efforts, to insure that defendants entered their guilty pleas understandingly, were inadequate. *See Carvalho v. Olim*, 55 Haw. 336, 519 P.2d 892 (1974); *Wong v. Among*, 52 Haw. 420, 477 P.2d 630 (1970). The specific intent involved is ". . . intent to commit therein a crime against . . . property rights." To one unfamiliar with the law, this could easily be misunderstood to include the intent to trespass or to break into the building. In fact this is the precise misconception that defendants Dicks and Hedgepeth now claim to have had at the time of their arraignments. The transcripts of the arraignments and pleas give no indication that the ambiguous phrase, "crime against property rights", was clarified by the judge or understood by the defendants.

## II. PLAUSIBILITY OF DEFENDANTS' EXPLANATION OF THE MISTAKEN BELIEFS THEY HAD WHEN THEY MADE THEIR PLEAS

It is basic to our system of criminal justice that judicial discretion should always be exercised in favor of innocence and liberty and of giving the accused a trial upon the merits. *See People v. Morreale*, 412 Ill. 528, 107 N.E.2d 721 (1952); *People v. Hancasky*, 410 Ill. 148, 101 N.E.2d 575 (1951). Accordingly, where it appears that a plea of guilty was entered on a misapprehension of the facts or of the law, or where there is doubt of the guilt of the accused, or where the accused has a defense worthy of consideration by a jury, the court should permit the withdrawal of a guilty plea. *People v. Morreale, supra; People v. Hancasky, supra.*

---

[4] *E.g.* California Penal Code § 1018 (Supp. 1976) provides in part:
On application of the defendant at any time before judgment the court may, *and in case of a defendant who appeared without counsel at the time of the plea the court must*, for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . (Emphasis added.)

In the instant case, I found defendants' "story", as presented at the motion hearing, very plausible. At a minimum, I believe, it creates doubt of the guilt of the defendants, and gives the appearance that their guilty pleas were entered on misapprehensions of fact and of law.

In essence defendants' "story" was as follows: that they entered the Landing Restaurant for reasons other than to steal food or anything else; that the reason defendant Dicks told the police they had entered for food was because the police were punching him and grabbing defendant Hedgepeth and he thought that that answer would appease them (the police); that he did not realize the gravity nor the implication of entering for food and so stuck with that story; that shortly after their arrest, defendant Hedgepeth wrote out a "full confession" of what occurred that night; that in that confession, Hedgepeth insisted that there was never any intention to steal anything; that they (defendants) trusted the detectives and the State's attorney and just accepted what was told to them; that their primary concern prior to the arraignment was to get the whole thing over with as quickly as possible; that they signed written waivers of indictment and pleas of guilty even prior to the arraignment; that Hedgepeth thought that the State's attorney and the judge had read her confession and thus she assumed that the charges brought accurately reflected what they had done; that they misunderstood the phrase "crime against property rights" and thought that their breaking into the building and their trespass met that requirement.

The logical consistency between the above explanation and the record of the events leading up to defendants' pleas is undeniable. For example, Hedgepeth's claim that they did not enter to steal anything but rather did so to "make love" is quite believable. Nothing in the restaurant was touched or taken. Had they broken in to eat because of hunger, they would naturally have gone directly to the food. They did not. Instead, as Hedgepeth wrote in her confession and later testified, they made love.

As to Dicks' explanation on why he fabricated the story

about going into the restaurant for food, I find it also credible. It is entirely reasonable for a young, inexperienced layman, who was at the time he made the statement being allegedly intimidated by the police, to think that breaking into a building to eat because of hunger would be less serious and more sympathy provoking than breaking in to make love. At any rate, such a story would be less embarrassing.

And finally, the inconsistency between Hedgepeth's written confession and their pleas of guilty substantiates their subsequent claim that they did not understand the charges that they pleaded to. At the motion hearing, Hedgepeth explained that after she wrote out a full confession of what they had done, she thought, perhaps naively, that the State's attorney would conform the charges accordingly. Furthermore, she claims that she thought, out of ignorance of criminal procedure, that the trial judge had read the written confession before the arraignment and was therefore aware of all of the relevant facts when he accepted their guilty pleas. Therefore, she claims, they mistakenly believed that the charges that were brought accurately reflected their conduct; they mistakenly thought that they were guilty.[5]

### III. TIMELINESS OF DEFENDANTS' MOTIONS TO WITHDRAW GUILTY PLEAS

"A swift change of heart is itself a strong indication that the plea was entered in haste and confusion; furthermore, withdrawal shortly after the event will rarely prejudice the Government's legitimate interests." *United States v. Barker*, 514 F.2d 208, 222 (D.C. Cir. 1975).

In the case at hand, defendants began having a "change of heart" about their pleas within a few days after their arraignment. More significantly, they filed their motions to withdraw their pleas prior to sentencing. According to the

---

[5] In Note, *Pre-Sentence Withdrawal of Guilty Pleas in Federal Court*, *supra* at 765, the author states: ". . . When the innocent defendant mistakenly pleads guilty because he thinks he is guilty and is later held to his plea, conviction is, of course, unjust. . . . ." *See also* United States v. Young, 424 F.2d 1276, 1279 (3d Cir. 1970); McCarthy v. United States, 394 U.S. 459 (1969).

60

weight of authority, therefore, the trial judge should have exercised his discretion liberally in favor of permitting the withdrawal of the pleas. *See* Note, 112 U. OF PA. L. REV., *supra; also see e.g. United States v. Barker, supra; United States v. Young,* 424 F.2d 1276 (3d Cir. 1970); *People v. Case,* 340 Mich. 526, 65 N.W.2d 803 (1954); *Robinson v. Commonwealth,* 310 Ky. 353, 220 S.W. 846 (1949).

In *Barker,* Judge Skelly Wright aptly states the federal view, which several leading jurisdictions have adopted:[6]

While Rule 32(d) permits post-sentence withdrawal of a guilty plea only to prevent "manifest injustice," the rule lays down no particular standard for deciding withdrawal motions filed prior to sentencing. However, the federal courts, relying on Kercheval v. United States, 274 U.S. 220, 224, 47 S. Ct. 582, 71 L. Ed. 1009 (1927), have uniformly ruled that presentence motions should be granted wherever such would be "fair and just." . . . Though even presentence motions are addressed to the sound discretion of the District Court, . . . with appellate reversal uncommon, . . . the "fair and just" standard is obviously more lenient than that of "manifest injustice," . . . . (Citations omitted.) *United States v. Barker,* 514 F.2d 208, 218-19 (D.C. Cir. 1975).

CONCLUSION

Perhaps at the time of the arraignment, without benefit of all the facts or the opportunity to deliberate on the matter, the trial judge justifiably believed that he could properly accept defendants' pleas. At the subsequent motion hearing, however, how the trial judge could in fairness deny the defendants their motion, and thus their day in court, bewilders me. I am convinced that, in light of the herein record, the trial judge clearly abused his discretion.

I am saddened by the results of this case — for the record herein cries out for reversal for the promotion of justice.

---

[6] *E.g.* People v. Superior Court of City & County of San Francisco, 114 Cal. Rptr. 596, 523 P.2d 636 (1974); Commonwealth v. Santos, 450 Pa. 492, 301 A.2d 829 (1973); People v. Bencheck, 360 Mich. 430, 104 N.W.2d 191 (1960); *see also* People v. Riebe, 40 Ill.2d 565, 241 N.E.2d 313 (1968).