122 P.3d 1148

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Christopher Allen KIMSEL, Defendant–Appellant.**

**No. 25851.**

Intermediate Court of Appeals of Hawai'i.

Oct. 26, 2005.

Richard D. Gronna, Honolulu, on the briefs, for Defendant–Appellant.

Lawrence A. Goya, Senior Deputy Attorney General, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., LIM and FOLEY, JJ.

Opinion of the Court by LIM, J.

Christopher Allen Kimsel (Kimsel or Defendant) appeals the May 1, 2003 findings of fact, conclusions of law and order of the Circuit Court of the First Circuit (circuit court). The circuit court's order denied the March 17, 2003 post-judgment motion that Kimsel had filed under Hawai'i Rules of Penal Procedure (HRPP) Rules 40 and 32(d) (2003) (the Rule 40 motion), which sought to set aside his no contest plea, vacate his conviction and reset this case for trial.

Because the circuit court misinformed Kimsel about his eligibility for a deferred acceptance of no contest (DANC) plea, he did not proffer his plea knowingly and voluntari-

ly, and it was constitutionally invalid. Whereas the prejudice is plain, we vacate and remand.

## I. Background.

The first installment of this saga is encapsulated in our opinion in *State v. Kimsel,* 101 Hawai'i 65, 62 P.3d 628 (App.2002), *cert. denied,* 101 Hawai'i 95, 63 P.3d 403 (2003):

BACKGROUND

Kimsel was indicted on January 17, 2001, as follows:

On or about the 21st day of August, 2000, ... CHRISTOPHER ALLEN KIMSEL, did threaten, by word and conduct, to cause bodily injury to another person, Robert Searle, who was a public servant, in reckless disregard of the risk of terrorizing Robert Searle, and/or did threaten, by word and conduct, to cause bodily injury to another person, Robert Searle, with the use of a dangerous instrument, in reckless disregard of the risk of terrorizing Robert Searle, thereby committing the offense TERRORISTIC THREATENING IN THE FIRST DEGREE in violation of Sections 707–716(1)(c) and 707–716(1)(d) of the Hawai'i Revised Statutes.[1]

The indictment did not identify the "dangerous instrument" allegedly used by Kimsel. Hawai'i Revised Statutes (HRS) § 707–700 (1993) states as follows:

"Dangerous instrument" means any firearm, whether loaded or not, and whether operable or not, or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury.

HRS § 853–4(9) (1993) states, in relevant part, as follows: "This chapter [pertaining to deferred acceptance of guilty

---

1. Hawaii Revised Statutes (HRS) §§ 707–716(1)(c) and –716(1)(d) (1993) provide, in pertinent part: "(1) A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening: .... (c) Against a public servant ...; or (d) With the use of a dangerous instrument." (Format modified.) HRS § 707–715(1) (1993) reads: "A person commits the offense of terroristic threatening if the

person threatens, by word or conduct, to cause bodily injury to another person or serious damage to property of another or to commit a felony: With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]" (Enumeration omitted; format modified.) "Terroristic threatening in the first degree is a class C felony." HRS § 707–716(2) (1993).

plea [ (DAGP)] and DANC plea] shall not apply when: .... [a] firearm was used in the commission of the offense charged[.]" [2]

On April 2, 2001, after Kimsel submitted a no contest plea form [3] to the court and the court questioned Kimsel about his knowledge of a no contest plea, the deputy attorney general described the incident in the following offer of proof:

At the time of the incident, Mr. Kimsel was a sergeant with the Sheriff's Division of the Public Safety Division. He was apparently in charge of the watch at the time, and the incident happened at about the end of the watch, which would have been about 9:00 p.m. of that evening. He was with a subordinate, a Robert Searle. Apparently they were discussing something concerning the possibility of the Sheriff's Division changing the location of their headquarters, and for no explanation apparently

... Sergeant Kimsel drew his service revolver, pointed it at Deputy Searle and said in effect "if you say that again, I'll shoot you[.]"

In relevant part, the following dialogue between Circuit Court Judge Gail Nakatani and Kimsel then ensued:

Q. All right. Now, Mr. Kimsel, in addition to your no contest plea, your attorneys have also moved for or asked the Court to defer acceptance of your plea, and have you discussed this matter with your attorneys?

A. Yes, Your Honor.

Q. On the other hand, if the motion is denied by the Court, then you will have already unconditionally pleaded no contest, and you will end up with a felony conviction on your record; do you understand that?

A. Yes, Your Honor.

---

2. HRS § 853-1 (1993 & Supp.2004) provides, in pertinent part:

(a) Upon proper motion as provided by this chapter:

(1) When a defendant voluntarily pleads guilty or nolo contendere, prior to commencement of trial, to a felony, misdemeanor, or petty misdemeanor;

(2) It appears to the court that the defendant is not likely again to engage in a criminal course of conduct; and

(3) The ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law, the court, without accepting the plea of nolo contendere or entering a judgment of guilt and with the consent of the defendant and after considering the recommendations, if any, of the prosecutor, may defer further proceedings.

(b) The proceedings may be deferred upon any of the conditions specified by section 706–624 [ (terms and conditions of probation)].... The court may defer the proceedings for a period of time as the court shall direct but in no case to exceed the maximum sentence allowable; provided that, if the defendant has entered a plea of guilty or nolo contendere to a petty misdemeanor, the court may defer the proceedings for a period not to exceed one year. The defendant may be subject to bail or recognizance at the court's discretion during the period during which the proceedings are deferred.

(c) Upon the defendant's completion of the period designated by the court and in compliance with the terms and conditions established, the court shall discharge the defendant and dismiss the charge against the defendant.

(d) Discharge of the defendant and dismissal of the charge against the defendant under this section shall be without adjudication of guilt, shall eliminate any civil admission of guilt, and is not a conviction.

(e) Upon discharge of the defendant and dismissal of the charge against the defendant under this section, the defendant may apply for expungement not less than one year following discharge, pursuant to section 831–3.2.

HRS § 853-2 (1993) provides: "Upon motion made before sentence by the defendant, the prosecutor, or on its own motion, the court will either proceed in accordance with section 853–1, or deny the motion and accept the defendant's plea of guilty or nolo contendere, or allow the defendant to withdraw the defendant's plea of guilty or nolo contendere only for good cause."

HRS § 853-3 (1993) provides: "Upon violation of a term or condition set by the court for a deferred acceptance of guilty plea or deferred acceptance of nolo contendere [ (DANC)] plea, the court may enter an adjudication of guilt and proceed as otherwise provided."

3. The no contest plea form Christopher Allen Kimsel (Kimsel) submitted was entitled "Motion to Defer" as well as "No Contest Plea." The body of the form contained the following statement: "I move to defer acceptance of my plea. I understand that if the Court denies my motion, the Court will then find and adjudge me guilty upon this plea, and impose sentence." The form also indicated that Kimsel had no plea agreement with the State. No one questioned Kimsel's eligibility for a DANC plea at the no contest plea hearing.

Q. So you understand that you are taking a risk by asking for this deferral, and the risk is that the motion may be denied; do you understand that?

A. Yes, Your Honor.

Q. And is that a risk that you are willing to take?

A. Yes, Your Honor.

. . . .

Q. All right. Then, Mr. Kimsel, to the charge of Terroristic Threatening in the First Degree, then, what is your plea?

A. No contest.

Q. All right. The Court finds that Mr. Kimsel enters his no contest plea voluntarily, intelligently and knowingly, and with a full understanding of the consequences of his plea. The Court will not accept his plea at this time pending disposition on the motion.

. . . .

THE COURT: All right.

Mr. Kimsel, you will be referred to the Adult Probation Division, and you will return back for sentencing on Wednesday, June 13, 2001 at 8:30 a.m., and you will report immediately to the Adult Probation Division downstairs.

At the sentencing hearing on June 20, 2001, Judge Nakatani stated, in relevant part, as follows:

And I think it's undisputed. If we look at the indictment, the indictment charges in the alternative and the State alleged the use of a dangerous weapon which, by definition, includes a firearm. So if we look at the statutory definitional path, it does lead to the inclusion of the use of a firearm within the charge and so the Court does believe that, as to the indictment itself, the defendant was placed on adequate notice and was afforded due process that the charge against him included the use of a firearm.

Then we go to the deferral statute. And 853-49 expressly provides that a firearm makes a defendant ineligible for a deferral. The language is unequivocal,

and it does say "as to the charged offense." So we still have to look back to the indictment, and the indictment has to contain the firearm. But the Court does find that the firearm allegation is contained within the indictment.

I don't believe also that the deferral is a sentencing option, . . . .

. . . But I look back to the indictment, and I think that the indictment fairly and reasonably includes the firearm. And I think that's—that is what is essential and critical to this decision.

So based on those findings, then, the Court will deny the motion for deferral and the Court does find that [Kimsel] is statutorily ineligible for this deferral consideration.

I would encourage you to take an appeal on this issue because I can't say that I know for sure.

Judge Nakatani then proceeded to sentence Kimsel to probation for five years upon conditions and to imprisonment for five days with credit for time served.

Judge Nakatani entered the July 16, 2001 Order [denying Kimsel's motion for a DANC plea]. Finding of Fact no. 8 of the July 16, 2001 Order states a conclusion of law that "H.R.S. § 853-4(9) specifically precludes the granting of a DANC [plea] where a firearm was used in the commission of the offense charged."

1.

In this appeal,[4] Kimsel's point and argument is as follows:

I. THE TRIAL COURT REVERSIBLY ERRED IN CONCLUDING THAT DEFENDANT KIMSEL WAS GIVEN NOTICE CONSISTENT WITH DUE PROCESS THROUGH THE LANGUAGE OF THE INDICTMENT TO STATUTORILY PRECLUDE THE COURT FROM EXERCISING IT'S [sic] DISCRETION TO EITHER GRANT OR DENY A MOTION FOR DE-

---

4. Kimsel was represented through judgment below and on direct appeal by Jonathan E. Burge

(Burge) and Craig T. Kimsel (Craig Kimsel).

FERRED ACCEPTANCE OF NO CONTEST PLEA.

....

A.  *Relevant Sentencing Law Requires That Aggravating Sentencing Factors Intrinsic To The Charged Offense, Such As A Handgun, Must Be Alleged In The Indictment In Order To Give The Defendant Notice That They Will Be Relied Upon At Sentencing[.]*

....

B.  *There Was No Notice Given To Defendant KIMSEL That The Intrinsic Circumstance Of The Use Of A Handgun Would Be Used To Statutorily Preclude [Kimsel] From Moving For A Deferred Acceptance Of His No Contest Plea Under H.R.S. § 853–1.*

C.  *The State Of Hawai'i's Contention Below That Case Law Mandating Notice Does Not Apply To The Preclusion Of Deferred Acceptances Of No Contest Pleas Is Erroneous And Would Foster "Sentencing By Ambush."*

(Emphases in the original.)

Plaintiff–Appellee State of Hawai'i (the State) responds that "the body of an indictment must include a specification of facts that constitute an aggravation of the crime charged" only when conviction "would result in application of a statute enhancing the penalty for the crime committed." *State v. Apao*, 59 Haw. 625, 636, 586 P.2d 250, 258 (1978). The State notes that the indictment sufficiently informed Kimsel of the charges against him as required by *State v. Vanstory*, 91 Hawai'i 33, 44, 979 P.2d 1059, 1070 (1999).

In response to Kimsel's complaint that the State's view "[w]ould [f]oster '[s]entencing [b]y [a]mbush,' " the State argues that "[n]ot only did H.R.S. § 853–4(9) serve as a limitation on the discretion of the circuit court to grant [Kimsel's] Motion for a DANC plea, it also gave notice to [Kimsel] that he was not eligible for a DANC plea."

We disagree with Kimsel's view that HRS § 853–4(9) does not bar a DANC plea unless the indictment explicitly alleges that a "firearm was used in the commission of the offense charged." HRS § 853–4(9) pertains to the fact, not the allegation. Whenever an indictment is worded so as to allow proof that a "firearm was used in the commission of the offense charged[,]" the possibility exists that the defendant is not eligible for a DANC plea. When Kimsel offered his no contest plea to the court, he was pleading to a charge possibly involving a firearm. After Kimsel (a) offered his no contest plea to the court and (b) the State outlined the details of the incident to the court, but before the court's decision not to "accept his plea at this time pending disposition on the motion" for a DANC plea, the State, defense counsel, and the court knew or should have known that Kimsel was not eligible for a DANC plea.

2.

Kimsel did not file a reply brief. Based on his argument that he was eligible for a DANC plea because the indictment failed to specify that the "dangerous instrument" allegedly used was a "firearm," his opening brief asked that we vacate the June 20, 2001 Judgment and the July 16, 2001 Order, conclude that he is eligible for a DANC plea, and remand for reconsideration of his motion for a DANC plea. Kimsel's opening brief did not indicate or justify the action he wanted this court to take if and when this court decided that he was ineligible for a DANC plea.

CONCLUSION

Accordingly, without prejudice to Kimsel's right to file a post-conviction proceeding as authorized by [HRPP] Rule 40, we affirm the circuit court's (1) July 16, 2001 "Findings of Fact, Conclusions of Law, and Order Denying Defendant Christopher Allen Kimsel's Motion for Deferred Acceptance of No Contest Plea"; and (2) June 20, 2001 Judgment.

*Kimsel*, 101 Hawai'i at 65–68, 62 P.3d at 628–31 (typesetting, ellipses and some brackets in the original; footnotes supplied).

The notice and judgment on appeal was filed on March 6, 2003. On March 17, 2003, a withdrawal and substitution of counsel was filed on Kimsel's behalf.[5] The same day,

---

5.  Burge and Craig Kimsel withdrew in favor of Richard D. Gronna.

Kimsel's new counsel filed the Rule 40 motion. The motion cited as its procedural bases HRPP Rules 40 [6] and 32(d).[7] Kimsel argued that his no contest plea was not knowing and voluntary because he had been misled by the circuit court into believing he was statutorily eligible for a DANC plea. Because former counsel had not disabused him of that notion, Kimsel also claimed ineffective assistance of counsel.

At the start of the April 24, 2003 hearing on the Rule 40 motion,[8] defense counsel offered to put Kimsel on the stand, but the deputy attorney general (DAG) suggested that defense counsel make an offer of proof instead:

> [DEFENSE COUNSEL]: And, Your Honor, this is my motion. And what I'd like to do Judge, I'll just start. And we would like to start with testimony. I'll have Mr. Kimsel take the stand.
>
> [DAG]: Your Honor, maybe if we could have Mr. Kimsel give an offer of proof, we might be able to speed things along.
>
> [DEFENSE COUNSEL]: Oh, okay.
>
> [DAG]: If there are certain issues, then we can stipulate.
>
> [DEFENSE COUNSEL]: That would make it easier.
>
> THE COURT: All right.
>
> [DEFENSE COUNSEL]: All right. If Mr. Kimsel were called to testify, he would testify that had he had been [ (sic)] in-

formed at the time that he changed his plea that he was statutorily ineligible for deferral, he would not have changed his plea but rather he would have proceeded to trial.

> [THE COURT]: Okay.
>
> [DAG]: I guess if that's what he would say, you know, we don't have any problems with that, Your Honor.
>
> [THE COURT]: All right.

Defense counsel went on to note that in light of the factual basis proffered by the prosecution at the change of plea hearing, the circuit court, the prosecution and former defense counsel were put on notice that Kimsel was statutorily ineligible for a DANC plea, *see Kimsel,* 101 Hawai'i at 68, 62 P.3d at 631 ("the State, defense counsel, and the court knew or should have known that Kimsel was not eligible for a DANC plea"), but no one informed him of that fact. This being so, defense counsel argued, Kimsel was "not properly advised; therefore, . . . it was not in fact a voluntary plea because . . . at the time that he had changed his plea and actually had entered a no contest plea, he was under the opinion that he was in fact statutorily eligible for consideration of . . . a deferral."

Defense counsel also emphasized Kimsel's motivation for pleading no contest and moving for a DANC plea:

---

6. Hawai'i Rules of Penal Procedure (HRPP) Rule 40(a) (2003) reads, in relevant part:

   > (1) *From Judgment.* At any time but not prior to final judgment, any person may seek relief under the procedure set forth in this rule from the judgment of conviction, on the following grounds:
   >
   > (i) that the judgment was obtained or sentence imposed in violation of the constitution of the United States or of the State of Hawai'i;
   >
   > (ii) that the court which rendered the judgment was without jurisdiction over the person or the subject matter;
   >
   > (iii) that the sentence is illegal;
   >
   > (iv) that there is newly discovered evidence; or
   >
   > (v) any ground which is a basis for collateral attack on the judgment.
   >
   > . . . .
   >
   > (3) *Inapplicability.* Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. Except for a claim of illegal

sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

7. HRPP Rule 32(d) (2003) provides:

   > A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence shall set aside the judgment of conviction and permit the defendant to withdraw his plea.

8. The Honorable Dan T. Kochi presided.

But I think that when you are—that when you have a benefit before you, the benefit being the deferral, and certainly that is a very large benefit because, as the court's aware, you get a deferral, at the end of your probation if you're good throughout probation and you do comply with the terms and conditions, you get a dismissal. And not only do you get a dismissal but you also get an expungement of the record.

And for someone like Mr. Kimsel that is a very huge benefit for him given the fact that his employment for the past, well, more than ten years has been in law enforcement. And certainly with this type of a record on his background precludes him from ever getting employed in any type of law-enforcement related activity which is, you know, which is essentially what he's been trained to do.

So I think that that is a very—was a very strong motivating factor in terms of his decision to go ahead and plead guilty [ (sic)] was the fact that he was not told otherwise when everybody else knew that he was not eligible to receive this benefit.

The State pointed out, however, that the circuit court told Kimsel there was a risk his motion for a DANC plea would be denied:

The court made it very clear that he needed to understand that it was not something that was automatically given. It was not a right that he was being accorded; that there was a risk that he might not be granted that DANCP; and whether he would be willing to take the risk by entering his plea and he did so. So it was not involuntary. It was not because he was not properly informed.

Defense counsel countered:

So essentially the real issue here is, you know, Mr. Kimsel's not being advised and not being properly advised. The question is is that, yes, there is a risk that it was not going to be granted, but that is when a situation where a deferral would otherwise be available to somebody.

This case is that the deferral was never available to him from the moment that the charge was brought against him. And so from that standpoint there was no risk because it was just simply not there.

The State also persisted in arguing that the statutory preclusion was not pellucid when Kimsel proffered his no contest plea:

In terms of the point about whether the court or anyone else was fully informed about whether the DANCP would have been precluded, I think it's clear that if the court were to review the body of legal research that was available to the court at the time that she made her ruling, there were no cases which specifically addressed the issue of whether a DANCP is precluded in the case of a terroristic threatening in the first degree charge where a dangerous instrument is used.

On May 1, 2003, the circuit court entered its findings of fact, conclusions of law and order denying Kimsel's motion. Calling Kimsel's offer of proof "the stipulated testimony of the Defendant," the circuit court found, concluded and ordered, as follows:

*FINDINGS OF FACT*

1. The Court that presided at the tendering of Defendant's no contest plea in this case to the offense of Terroristic Threatening in the First Degree (hereinafter "the instant offense") on April 2, 2001, did properly conduct an inquiry of the Defendant to ascertain that the Defendant did voluntarily, intelligently and knowingly enter his no contest plea to the instant offense.

2. The presiding Court at the Defendant's entering of a no contest plea to the instant offense on April 2, 2001 (hereinafter "the presiding Court"), did properly inform the Defendant of the direct consequences of making his no contest plea.

3. The presiding Court also ascertained from the Defendant prior to entering his no contest plea on April 2, 2001, that the Defendant did understand that the granting of his request for [DANC] was not assured, that the Defendant understood that there was a risk that his request for a DANC might not be granted, and that he was willing to take that risk.

4. Both at the time that the Defendant entered his no contest plea on April 2, 2001, and the time that Defendant's motion

for a DANC was denied and the Defendant was subsequently sentenced on June 20, 2001, on the instant offense, there was no state case law that explicitly precluded the granting of a motion for a DANC where a firearm was used during the commission of the offense of Terroristic Threatening in the First Degree.

5. The Defendant did not present any evidence to show that when he entered his no contest plea on April 2, 2001, his plea was involuntary, he was not made aware of the direct consequences of entering his no contest plea, or that the Defendant was not made aware that his motion for a DANC could be denied.

From the foregoing findings of fact, the Court makes the following conclusions of law:

### CONCLUSIONS OF LAW

1. The only ground upon which a defendant may withdraw a no contest plea after sentence is imposed is to correct a "manifest injustice". There was no "manifest injustice" here, as the Defendant voluntarily entered his no contest plea on April 2, 2001, with full knowledge of the direct consequences of entering his plea. Rule 32(d), Hawaii Rules of Penal Procedure; *State v. Barnett[Barnett v. State]*, 91 Hawai'i 20, 28, 979 P.2d 1046, 1054 (1999).

2. Neither is the Defendant entitled to withdraw his no contest plea because of his claim that he received ineffective assistance from his counsel at the time of his plea and his sentencing. For such a claim to have any weight, the Defendant must be able to point to a specific instance where his counsel displayed lack of skill, judgment or diligence, and that those errors or omissions resulted in the withdrawal or substantial impairment of a meritorious defense. *Barnett*, at 91 Haw. 27, 979 P.2d 1053. The Defendant alleged that his counsel knew or should have known that, by using a firearm to commit the instant offense, he was statutorily precluded from

receiving a DANC from the Court. Defendant's prior counsel did not provide ineffective assistance to the Defendant where it was not clear that the Defendant was precluded from moving for a DANC. There was no case law at the time of Defendant's plea and sentencing that directly addressed the question of whether the Defendant was precluded from receiving a DANC for the offense of Terroristic Threatening in the First Degree where a firearm was used.

3. The Defendant did not meet his burden of showing that there were any legal grounds upon which the Court must grant his instant motion. Accordingly,

### ORDER

IT IS HEREBY ORDERED THAT Defendant Kimsel's Motion to Set Aside No Contest Plea, Vacate Conviction, and Reset Case for Trial is denied.

Kimsel filed his notice of this appeal on May 22, 2003.

### II. Discussion.

■ On appeal, Kimsel claims the circuit court abused its discretion [9] in denying his Rule 40 motion. In support, Kimsel again contends the circuit court that took his plea erred, and his former counsel rendered ineffective assistance, by misleading him into believing he was statutorily eligible for a DANC plea.

■ HRPP Rule 32(d) provides:

A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence shall set aside the judgment of conviction and permit the defendant to withdraw his plea.

Hence, "when a defendant moves to withdraw a plea of nolo contendere under HRPP [Rule] 32(d) after imposition of sentence, only

---

9. "When a trial court denies a motion to withdraw a plea, the trial court's determination will not be disturbed on appeal unless abuse of discretion is clearly shown. The burden of establishing abuse of discretion is on appellant and a strong showing is required to establish it. An abuse of discretion occurs only if the trial court

has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *State v. Nguyen*, 81 Hawai'i 279, 286, 916 P.2d 689, 696 (1996) (citations and internal quotation marks omitted).

a showing of manifest injustice will entitle the defendant to withdraw his or her plea." *State v. Nguyen,* 81 Hawai'i 279, 286, 916 P.2d 689, 696 (1996) (citation omitted).

■ Kimsel couches his criticism of the circuit court in terms of a failure to advise him of a direct consequence of his plea, in violation of constitutional principles, *see State v. Dicks,* 57 Haw. 46, 49, 549 P.2d 727, 730 (1976), and HRPP Rule 11 (2001).[10] "Manifest injustice occurs when a defendant makes a plea involuntarily or without knowledge of the direct consequences of the plea." *Nguyen,* 81 Hawai'i at 292, 916 P.2d at 702 (citations omitted).

■ The State responds that there was no manifest injustice here, because a defendant's statutory eligibility for a DANC plea *vel non* is not a direct but rather a collateral consequence of the plea, and thus, the circuit court complied with HRPP Rule 11 and all constitutional imperatives. "Courts need not inform defendants prior to accepting their guilty or nolo contendere pleas about every conceivable collateral effect that a conviction might have." *Nguyen,* 81 Hawai'i at 287, 916 P.2d at 697 (citation omitted).

We will not be drawn into this debate between Kimsel and the State, because the question here is not whether Kimsel was informed of a consequence—direct or collateral—of his no contest plea. Rather, the question before us is whether the circuit court abused its discretion in denying Kimsel's Rule 40 motion, where the circuit court taking his plea affirmatively misled him into believing he was statutorily eligible for a DANC plea.

In this latter connection, the State echoes on appeal the argument of ambiguity it made below, which the circuit court adopted in denying the Rule 40 motion: "there was no state case law [at the time Kimsel tendered his no contest plea] that explicitly precluded the granting of a motion for a DANC where a firearm was used during the commission of the offense of Terroristic Threatening in the First Degree." That is a fact, but it is neither here nor there. After the State had proffered the factual basis for the plea, the plain language of HRS § 853–4(9) needed no judicial gloss to fairly radiate the realization that Kimsel was statutorily ineligible for a DANC plea.

Considering the same "stipulated testimony of the Defendant" as the circuit court did, we come to a different conclusion under constitutional commands. Because the circuit court misinformed Kimsel about his eligibility for a DANC plea, he did not proffer his plea knowingly and voluntarily, and it was constitutionally invalid. If it is manifest injustice "when a defendant makes a plea . . . without knowledge of the direct consequences of the plea[,]" *Nguyen,* 81 Hawai'i at 292, 916 P.2d at 702 (citations omitted); *see also* HRPP Rule 32(d), it is *a fortiori* manifest injustice when a court affirmatively misleads a defendant about the availability of an intrinsic inducement for his plea.

■ In so holding, we hearken to the supreme court's general statement of the precautions demanded by the constitutional stakes involved:

<blockquote>

so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) that if he is not a citizen of the United States, a conviction of the offense for which he has been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

(d) *Insuring That the Plea Is Voluntary.* The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from any plea agreement.

</blockquote>

10. HRPP Rule 11 (2001) provides, in pertinent part:

(c) *Advice to Defendant.* The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that he understands the following:

(1) the nature of the charge to which the plea is offered; and

(2) the maximum penalty provided by law, and the maximum sentence of extended term of imprisonment, which may be imposed for the offense to which the plea is offered; and

(3) that he has the right to plead not guilty, or to persist in that plea if it has already been made; and

(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind,

We stated in *Wong v. Among,* 52 Haw. [420,] 425, 477 P.2d [630,] 634 [(1970)]:

"A plea of guilty in itself is a conviction and simultaneous waiver of several important constitutional guarantees— the privilege against self incrimination, a trial by jury, and the confrontation of one's accusers. Such a waiver is not constitutionally acceptable unless made voluntarily and with full understanding of the consequences. (Citations omitted.)"

The standard for determining the constitutional validity of guilty pleas "was and remains whether the plea represents a voluntary and intelligent choice among the alternate courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

*Reponte v. State,* 57 Haw. 354, 362, 556 P.2d 577, 583 (1976). *See also State v. Gumienny,* 58 Haw. 304, 313, 568 P.2d 1194, 1200 (1977) ("an expectation [on the part of the defendant that a plea agreement to support his DAGP would be accepted by the judge], notwithstanding that it may be reasonable, is an insufficient premise upon which to permit withdrawal of the plea, *absent a showing that the expectation was improperly induced* " (emphasis supplied)). *Cf. United States v. Davis,* [428 F.3d 802, 806] (9th Cir.2005) (where defense counsel "grossly mischaracterized" the possible sentence upon a guilty plea, a post-sentence motion to withdraw the plea may be granted, if the defendant can show that absent counsel's erroneous advice, he would have insisted on a trial).

In the light of Kimsel's stipulated and unchallenged testimony—"that had he ... been informed at the time that he changed his plea that he was statutorily ineligible for deferral, he would not have changed his plea but rather he would have proceeded to trial"—the prejudice is plain, and we conclude the circuit court abused its discretion in denying the Rule 40 motion.

### III. Conclusion.

Accordingly, we vacate the May 1, 2003 findings of fact, conclusions of law and order of the circuit court and its June 20, 2001 judgment of conviction and sentence, and remand to the circuit court with instructions to set aside Kimsel's no contest plea and allow him to plead anew.